ALBERT FELICIANO, Plaintiff-Appellant, *v.* WAIKIKI DEEP WATER, INC., dba KIKU HUT and EL MORROCCO, MARJORIE PETERMAN, Defendants-Appellees, and JOHN DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 2-10, ROE "NON-PROFIT" CORPORATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, Defendants

NO. 12324

(CIVIL NO. 85-3725)

APRIL 11, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

The plaintiff, Albert Feliciano, appeals the grant of summary judgment in favor of the defendant, Waikiki Deep Water, owners of the Kiku Hut bar. Feliciano was injured when his truck left the road and crashed, and he now claims that immediately before the accident Kiku Hut was negligent, reckless, careless, and intentional in serving and coercing him into drinking alcoholic beverages while he was already under the influence of alcohol in violation of the

liquor control statute, Hawaii Revised Statutes (HRS) § 281-78(a)(2)(B). He argues that this conduct constituted a breach of the duty of a bar or tavern to avoid affirmative acts that increase the peril to an intoxicated customer as set out in *Bertelmann v. Taas Associates*, 69 Haw. ____, 735 P.2d 930 (1987). We hold that the bar's actions were not in breach of this duty, and affirm the grant of summary judgment.

## I.

In September of 1983 Albert Feliciano was an unsophisticated nineteen year old living in Waianae. He grew up in a sheltered environment due to an accident in which he was run over by a truck as a teenager, preventing him from attending school for a considerable period of time. Before this incident, Feliciano had never driven into Honolulu, and had never been to Waikiki. He had tasted beer on prior occasions but was not an experienced drinker.

On September 29, 1983, Feliciano told his parents he was going to a movie in Nanakuli with some friends and was allowed to take the family truck. Instead, he and his friends went to Waikiki to the Kiku Hut hostess bar. Upon entering the Kiku Hut, Feliciano and his friends were approached by three hostesses who sat with them. There was a stage in the middle of the room with a naked woman dancing on it. Although Feliciano did not recall ever asking for a drink, drinks that were apparently alcoholic began arriving "automatically" at the table. He was afraid because he had never been in an environment like this before and he was intimidated by the aggressiveness of the waitresses. While there, he consumed at least four drinks in a two-and-a-half hour period and spent approximately $175.00. During the drive home, Feliciano's truck left the road and crashed, rendering him a quadriplegic.

In his amended complaint, Feliciano alleges the following:

16. During the time Plaintiff spent in Defendants' bar, he was encouraged and coerced into consuming alcohol by employees of Defendants and said bar although they knew or in the exercise of due diligence should have known that he was young and unsophisticated and unable to understand the effects said alcohol would have on his body and mind.

17. The above-described motor vehicle accident was caused by Plaintiff's intoxicated condition, which condition was a direct and proximate result of Defendants . . . negligent, reckless, careless and intentional conduct in serving and coercing Plaintiff into drinking alcoholic beverages..

After a hearing, summary judgment for Kiku Hut was granted without specific findings of fact or conclusions of law.[1]

## II.

In reviewing summary judgment decisions, we apply the same standard as the trial court, using the same materials as were before them in determination of the motion. *Munoz v. Yuen,* 66 Haw. 603, 605-06, 670 P.2d 825, 827 (1983).

The question in this case is whether the Kiku Hut owes a duty to Feliciano under the common law dram shop action established in *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980) and further discussed in *Bertelmann v. Taas Associates,* 69 Haw. _____, 735 P.2d 930 (1987). In *Ono,* a tavern customer who had been served intoxicating beverages crashed into another car while driving away from the bar. The customer was killed and a passenger in the other car was injured. The passenger sued the tavern owner, claiming that the bar had served liquor to the already intoxicated customer in violation of the liquor control statute, HRS § 281-78(a)(2)(B).[2] The court allowed recovery to the passenger on the grounds that the passenger was within the class of persons protected by the liquor control statute, and that violation of the statute could be used to prove causation. 62 Haw. at 138, 612 P.2d at 539.

In *Bertelmann v. Taas Associates,* 69 Haw. _____, 735 P.2d 930 (1987), we "emphatically reject[ed] the contention that intoxicated

---

[1] The motion filed was to dismiss for failure to state a claim for relief, or in the alternative, for summary judgment. Because the trial court considered the affidavits of Feliciano and his mother in addition to the pleadings, we will treat the motion as one for summary judgment.

[2] The language of the statute provides that "(a) At no time under any circumstances shall any liquor: . . . (2) Be sold or furnished by any licensee to: . . . (B) Any person at the time under the influence of liquor[.]"

liquor consumers can seek recovery from the bar or tavern which sold them alcohol." 69 Haw. at ____, 735 P.2d at 933. We did, however, recognize a limited exception to this general rule:

> We realize a bar or tavern owes a duty to avoid affirmative acts which increase the peril to an intoxicated customer. *Thrasher v. Leggett,* 373 So. 2d 494 (La. 1979). But, in the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises, of itself, does not constitute actionable negligence. (Citation omitted). ·

69 Haw. at ____, 735 P.2d at 934.

Feliciano argues that because he was unsophisticated, and because the conduct of the Kiku Hut employees was aggressive, intimidating, and manipulative in serving and coercing him to drink, there were affirmative acts on the part of Kiku Hut that increased his peril. Kiku Hut argues that it would be an enormous burden to place on tavern owners to determine the amount of sophistication of their customers.

As to the first point, *Bertelmann* does not contemplate consideration of the qualities of the intoxicated customer in placing a duty upon taverns to avoid affirmative acts that increase the danger to the customer. As Kiku Hut argues, this would place an intolerable burden upon bar personnel.

This is further supported by an examination of the type of conduct constituting such affirmative acts. W. Prosser, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 56, at 378 (5th Ed. 1984) (duty exists if intoxicated person is ejected into the danger of a railroad yard); *Thrasher v. Leggett,* 373 So. 2d 494 (La. 1979) (no responsibility for harm caused by plaintiff's inebriated condition and not by affirmative acts of the tavern); *Parvi v. City of Kingston,* 41 N.Y.2d 553, 362 N.E.2d 960, 394 N.Y.S.2d 161 (1977) (city had duty to plaintiff hit by a car who had been transported, while intoxicated, to spot outside the city limits near a busy thruway).

From these authorities, we conclude that without more, aggressive sales of drinks at a bar do not constitute affirmative acts that would create liability to the consumer on the part of the bar or tavern. In the instant case, Feliciano apparently paid for the drinks

and voluntarily drank them. While Feliciano's situation is tragic, it does not render Kiku Hut liable. We therefore affirm the grant of summary judgment in favor of the tavern.

Affirmed.

*Trudy K. Senda (Wayne D. Parsons* with her on the brief; of counsel, Wayne D. Parsons Law Offices) for plaintiff-appellant.

*James C. McWhinnie (Edward J. Bybee* with him on the brief; of counsel, Rother, Bybee, Chang & Rulon) for defendants-appellees.