**MARY WINTERS,** Plaintiff–Appellant, v. **SILVER FOX BAR, WHITE PARTNERSHIP, BLACK CORPORATION,** and **DOES, ONE through TWENTY,** inclusive, Defendants–Appellants

No. 13802

(USDC NO. 89–00051 DAE)

AUGUST 7, 1990

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY MOON, J.

The United States District Court for the District of Hawaii certified the following question to this court:

Whether the sale of liquor to a minor (in violation of Hawaii Rev. Stat. § 281–78(a)(2)(A) [(1985 & Supp. 1989)])[1] who subsequently becomes drunk and sustains injury precludes the minor (or the estate and survivors) from suing the commercial liquor supplier.

On December 8, 1989, this court remanded the question to the District Court for clarification of the term "minor." On April 12, 1990, the District Court responded that "minor" for purposes of this certified question is an individual below the age of twenty–one (21) as defined by HRS § 281–1 (Supp. 1989).[2]

We answer the certified question in the affirmative.

I.

On October 25, 1987 the Silver Fox Bar (Appellee), situated in downtown Honolulu, sold intoxicating liquor to Daniel C.

---

[1] HRS § 281–78(a)(2)(A) (1985 & Supp. 1989) provides in pertinent part:

§ 281–78 **Prohibitions.** (a) At no time under any circumstances, . . . shall any liquor:

. . . .

(2) Be sold or furnished by any licensee to:

(A) Any minor,

. . . .

Provided that the sale of liquor to a minor shall not be deemed to be a violation of this subsection if, in making the sale the licensee was misled by the appearance of the minor and the attending circumstances into honestly believing that such minor was of legal age and the licensee acted in good faith, and it shall be incumbent upon the licensee to prove that the licensee so acted in good faith[.]

[2] The Legislature in 1986 amended the definition of minor in HRS § 281–1 from "any person below the age of eighteen years" to "any person below the age of twenty–one years."

Ferris, an eighteen (18) year old minor,[3] in violation of HRS § 281–78(a)(2)(A). Daniel consumed quantities of alcohol and subsequently while driving lost control of his motor vehicle and died. We note that the decedent in purchasing liquor from Appellee violated HRS § 281–101.5(b) (1985)[4] and could have been subject to criminal penalty pursuant to HRS § 281–101.5(d) (Supp. 1989).[5]

Appellant Mary Winters, mother of the deceased, filed a claim for wrongful death in the United States District Court for the District of Hawaii against Appellee based upon diversity of citizenship alleging dram shop liability. Appellee moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

Traditionally, at common law, a cause of action did not exist against dram shops[6] when they sold or served liquor to patrons

---

[3] This court's order remanding case to the United States District Court states, in part, "the parties have agreed, since the certification, that the person who allegedly was served the liquor was just short of 19 years of age at the time of the incident in question[.]"

[4] HRS § 281–101.5(b) (1985) provides in pertinent part:

(b) No minor shall purchase liquor and no minor shall have liquor in the minor's possession or custody in any motor vehicle on a public highway[.]

[5] HRS § 281–101.5(d) provides:

(d) Any person under age eighteen who violates this section shall be subject to the jurisdiction of the family court. .... Any person age eighteen to twenty–one who violates subsection (b) ... shall be guilty of a petty misdemeanor.

[6] A dram shop is "[a] drinking establishment where liquors are sold to be drunk on the premises; a bar or saloon." *Black's Law Dictionary* 444 (5th ed. 1979).

who injured themselves due to intoxication nor when innocent third parties suffered injuries due to the tavern patron's inebriation. The rationale in support of the rule precluding dram shop liability was that the proximate cause of injuries due to the person's intoxication was the consumption of the liquor, not its sale or service. *Ono v. Applegate*, 62 Haw. 131, 134, 612 P.2d 533, 537 (1980).

In *Ono v. Applegate* this court recognized a common law dram shop action allowing a person injured in an automobile collision with an inebriated tavern customer to recover damages from the tavern that sold liquor to the customer. Persuaded by public policy reflecting a clear judicial trend across the nation to allow such a cause of action, we held that the liquor control statute, HRS § 281–78(a)(2)(B) (1976),[7] created a duty upon commercial liquor suppliers not to serve a person under the influence of alcohol and that such sale or service of alcohol may be a proximate cause of injuries inflicted upon those within the protected class, i.e. innocent third persons.

However, we have refused to further modify the common law dram shop action to permit recovery against commercial suppliers of liquor by inebriated liquor consumers who sustain injuries because of their voluntary intoxication. In *Bertelmann v. TAAS Associates*, 69 Haw. 95, 735 P.2d 930 (1987), this court in holding that a decedent's estate and his survivors failed to state a claim against a commercial supplier of alcoholic beverages stated:

> We agree with the majority of jurisdictions that have passed on this issue and emphatically reject the contention that intoxicated liquor consumers can seek recovery

---

[7] HRS § 281–78(a)(2)(B) (1976) states, in relevant part:

§ 281–78 **Prohibitions.** (a) At no time under any circumstances shall any liquor:

. . . .

(2)　Be sold or furnished by any licensee to:

. . . .

(B)　Any person at the time under the influence of liquor[.]

from the bar or tavern which sold them alcohol. Drunken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis.

*Id.* at 100, 735 P.2d at 933 (citing *Wright v. Moffit*, 437 A.2d 554 (Del. 1981)).

We reasoned that:

HRS §§ 281–78(a)(2)(B) and 281–78(b)(1) were created to protect the general public from drunk driving accidents, not to reward intoxicated liquor consumers for the consequences of their voluntary inebriation. *See Wright*, 437 A.2d at 557.

*Id.* at 101, 735 P.2d at 934.

Appellant contends that minors were intended to be included in the protected class and that *Bertelmann* is not applicable to the instant case as *Bertelmann* involved an adult consumer of alcohol. This court in *Bertelmann* specifically left open the question which is now presented to us in the form of the aforestated certified question. We noted that:

At least one jurisdiction has ruled that public policy, to prevent alcohol abuse by immature and inexperienced minors, requires those who illegally furnish liquor to minors be held legally accountable. *See Trujillo v. Trujillo*, 104 N.M. 379, 721 P.2d 1310 (N.M. Ct. App.), *cert. denied*, 104 N.M. 289, 720 P.2d 708 (N.M. 1986).[8] However, the majority of cases, like *Miller [v. City of*

---

[8]In *Trujillo*, the New Mexico court in denying a cause of action to an adult patron of a tavern who injured himself stated that "concerns of public policy do not extend to protect an intoxicated adult patron from the results of his intoxication under Section 60–7A–16 [prohibits sale of alcohol to an intoxicated person]." 104 N.M. at 382, 721 P.2d at 1313. *Trujillo* cited *Porter v. Ortiz*, 100 N.M. 58, 665 P.2d 1149 (N.M. Ct. App. 1983), which made the distinction and recognized a minor's cause of action based upon a tavern's violation of the statutes for knowingly serving alcohol to minors.

*Portland*, 288 Or. 271, 604 P.2d 1261 (1980)], makes no distinction between minors and adults and rules that, under common law and/or statute, neither minors nor adults who hurt themselves after becoming intoxicated possess a cause of action against whoever provided them with liquor. *See Sutter v. Hutchings*, 254 Ga. 194, 327 S.E.2d 716, *on remand, Sutter v. Turner*, 174 Ga. App. 743, 332 S.E.2d 175 (1985); *Ruth v. Benvenutti*, 114 Ill. App. 3d 404, 449 N.E.2d 209 (1983).

*Id.* at 101 n.3, 735 P.2d at 934 n.3. *See also* Annotation, *Liability of Persons Furnishing Intoxicating Liquor For Injury To Or Death Of Consumer, Outside Coverage Of Civil Damage Acts*, 98 A.L.R.3d 1230, 1260–63 (1980).

The rationale of the majority view is that absent legislative intent or public policy to change the common law and allow a tort right of action utilizing regulatory and criminal statutes to establish duty and conduct of care, the courts refuse to judicially legislate. In *Miller*, the Oregon court noted it had previously modified the common law to allow an action against a commercial seller of liquor for the death of a third party killed by a minor who received liquor in violation of its liquor control statute prohibiting the sale of liquor to a minor. However, the court held that the inebriated minor was not within the protected class of the statute and refused to allow a cause of action against the tavern where the injured minor himself violated a statute prohibiting minors from purchasing liquor. The court stated:

[W]e believe it is inappropriate to use ORS 471.130(1) [Oregon state statute prohibiting the sale of liquor to persons under the age of twenty–one] as a basis for civil liability by licensees to the underage minor. ORS 471.430 prohibits minors . . . from purchasing or acquiring alcoholic liquor and provides a penalty for the violation (a fine). It would be inconsistent with apparent legis-

> lative policy to reward the violator with a cause of action
> based upon the conduct which the legislature has chosen
> to prohibit and penalize.

288 Or. at 279, 604 P.2d at 1265 (footnotes omitted).

Similarly, in this jurisdiction there is absent any legislative intent or public policy to extend the protected class to minors and the same inconsistency as pointed out in *Miller* would exist if this court were to allow the cause of action sought by Appellant insofar as decedent's own conduct of purchasing liquor was an activity which our legislature expressly intended to prohibit and penalize.

*Feliciano v. Waikiki Deep Water, Inc.*, 69 Haw. 605, 752 P.2d 1076 (1988), provides further confirmation of this court's refusal to judicially enlarge the protected class to include any persons who sustain injuries due to their own voluntary intoxication in the absence of any legislative expression, intent or public policy to do so regardless of their level of maturity, sophistication or state of intoxication at the time they are served alcoholic beverages by a commercial liquor supplier. Feliciano, an "unsophisticated nineteen year old,"[9] grew up in Waianae in a sheltered environment due to injuries he received years previous preventing him from attending school for a considerable time. Prior to the accident, he had never driven to Honolulu nor had he been to Waikiki. He was not accustomed to drinking although he had tasted beer on prior occasions.

On the date of accident, Feliciano and some friends went to a Waikiki hostess bar. He alleged that while at the bar he was apprehensive and felt intimidated by the bar's hostesses who continually encouraged and coerced him to consume at least four (4) alcoholic beverages over a two and a half hour period causing him to spend approximately $175.00. Feliciano argued that the service

---

[9] At the time of the accident (September 29, 1983), the age of majority was eighteen years, and thus Feliciano was legally an "adult."

of alcohol to him while intoxicated was in violation of the liquor control statute, HRS § 281–78(a)(2)(B), and that because he was unsophisticated the aggressive conduct of selling drinks by the bar's employees constituted a breach of duty on the part of the bar to avoid affirmative acts that increased the peril to an intoxicated consumer, a cause of action referred to in ***Bertelmann.***[10] 69 Haw. at 608, 752 P.2d at 1078.

In affirming the lower court's granting of summary judgment against Feliciano we concluded, "that without more, aggressive sales of drinks at a bar do not constitute affirmative acts that would create liability to the consumer on the part of the bar or tavern. In the instant case, Feliciano apparently paid for the drinks and voluntarily drank them." 69 Haw. at 608–09, 752 P.2d at 1079.

As a nineteen year old adult, Feliciano's inexperience, immaturity and unsophistication regarding the consumption and effects of alcohol which parallels the experience level of many of today's "minors" (below twenty–one years of age) was insufficient to either place him in the protected class or support the basis for a cause of action premised on the tavern's employees' affirmative acts which arguably increased his peril after he became intoxicated. It is difficult to comprehend that had Feliciano's accident occurred after the raising of the drinking age to twenty–one years that this court's decision would have differed. Generally, the classification of "minor" connotes one who lacks maturity and requires supervision and protection for his/her well–being and safety. However, for this court to allow "minors" (below twenty–one years of age) to categorically be placed within the protected class would be inconsistent with the expression of legislative intent to

---

[10] "We realize a bar or tavern owes a duty to avoid affirmative acts which increase the peril to an intoxicated customer." 69 Haw. at 101, 735 P.2d at 934 (citation omitted).

treat those within the age bracket of eighteen to twenty years as responsible adults in all other respects.[11]

Appellant argues that the legislative history of the 1986 amendment raising the legal drinking age from eighteen years to twenty–one years "indicates that it was the intent of the legislature to protect minors from the evils of alcohol" and include them in the protected class. Opening Brief of Plaintiff–Appellant at 20. On the contrary, close scrutiny of the legislative history fails to support Appellant's position. It is evident that the primary and overriding motivation for the legislature to raise the legal drinking age to twenty–one years was to comply with the Federal mandate requiring all states to make unlawful the "purchase or public possession . . . of any alcoholic beverage by a person who is less than twenty–one years of age" or suffer the consequences of federal highway funds being withheld. 23 U.S.C. § 158(a)(1) (Supp. 1990). Legislators were fully aware and apprehensive that:

> [U]nder Public Law 98–363 [23 U.S.C. § 158(a)(1) (Supp. 1990)], the State of Hawaii will lose five per cent or $6,285,000 of its federal highway funds for fiscal year 1987 if Hawaii does not have a drinking age requirement of twenty–one by October 1, 1986, and will lose ten per cent or $12,570,000 of these funds for fiscal year 1988 if it does not have this requirement by October 1, 1987.

---

[11] *See, e.g.,* HRS § 445–212 (Supp. 1989) [unlawful to sell or furnish tobacco to persons under eighteen years and likewise unlawful for persons under eighteen to purchase tobacco]; Haw. Const. art. II, § 1 [eighteen year olds have the right to vote]; HRS § 286–112 (1985) [eighteen year olds may obtain driver's license without parental consent]; HRS § 572–2 (1985) [eighteen year olds may marry without parental consent]; 10 U.S.C. § 505 [eighteen year olds may enlist in the armed services of the United States without parental consent]; HRS § 663–1 (1985) [eighteen year olds are personally responsible for their own torts]; Chapter 560 (Probate Code), Chapter 571 (Family Court) and Chapter 712 (Penal Code) [the term "minor" as used in these chapters generally refers to a person under eighteen years of age].

Session Laws of Hawaii (S.L.H.) 1986, c. 342, § 1, at 804–05.[12]

The 1986 legislature's reluctance in passing the amendment raising the legal drinking age to twenty–one years is manifest by concerns expressed regarding infringement upon state's rights and constitutionality of the federal mandate:

> The legislature is aware that the State of Hawaii is chal-
> lenging the constitutionality and rationale of Public Law
> 98–363 through an amicus brief filed on September 17,

---

[12] The statements of the Chairman of the Senate Transportation Committee, Senator Cayetano, best illustrates the sentiments of many legislators regarding the amendment:

> [I]f there is anything that I've learned in the 12 years that I have been a member of the Legislature, it is that we sometimes have to deal with the reality of the situation rather than the ideal. This is one of those cases. The reality is, if we do not pass this bill the state stands to lose approximately $19 million in federal highway money over the next several years.
>
> As far as I'm concerned, that is the only reason I am for this bill. I do not think raising the drinking age will in fact bring about the benefits that proponents of raising the drinking age believe will. However, I think I'm battle–scarred enough and experienced enough to know that on this we are on the short end and the Federal Government has the upper hand.

Sen. Conf. Comm. Rep. No. 32–86, in 1986 Senate Journal, at 633.

Sen. Stand. Comm. Rep. No. 516–86, in 1986 Senate Journal, at 1015 states:

> Your Committee believes further delay will only jeopardize receipt of federal funds. . . .
>
> Your Committee views this legislation as a test of the proposition that a drinking age of twenty–one will significantly reduce traffic fatalities and injuries.

Hse. Conf. Comm. Rep. No. 39–86, in 1986 House Journal, at 930 states:

> Accordingly, your Committee finds that it cannot postpone this matter further and is compelled to act to avoid the loss of federal highway funds. These funds are sorely needed for the construction of necessary state highway projects; moreover, last year the Legislature was forced to increase the fuel and weight taxes and the vehicle registration fee significantly to keep the highway fund solvent.

1985. While the legislature supports and will continue to support this effort, the legislature further finds that the State's federal highway funding will be jeopardized if no legislation is enacted in the 1986 legislative session to raise the drinking age to twenty-one.

S.L.H. 1986, c. 342, § 1, at 805.

Moreover, we note that the 1986 Regular and Special Session of the legislature focused its efforts on tort reform due to the then purported liability insurance crisis and sought to reduce and stabilize automobile[13] and commercial liability insurance rates.[14] Therefore, it would be totally inconsistent with the legislative policy of 1986 to conclude that it intended to expand the liability of

---

[13] Under Act 342, the legislature also provided that in anticipation of the decrease in traffic fatalities and injuries expected from a higher drinking age and therefore a reduction in the payout of insurance benefits that it would be appropriate to pass on this savings in the form of premium reductions. *See* S.L.H. 1986, c. 342, § 6 [amendment to HRS § 294–13(n)], at 807–10.

[14] S.L.H. 1986 Special Session and Regular Session of 1987, c. 2, Section 1, at 3–4 states:

> **Legislative findings and purpose.** The legislature finds and declares that a solution to the current crisis in liability insurance has created an overpowering public necessity for a comprehensive combination of reforms to both the tort system and the insurance regulatory system. ... The purpose of this Act is to ensure the widest possible availability of liability insurance at reasonable rates, to ensure a stable market for liability insurers, and to provide for means to adjust insurance premium rates in the context of anticipated cost savings from tort reform legislation affecting the affordability and availability of liability insurance.

Sen. Spec. Comm. Rep. No. S5–86, in 1986 Special Session Senate Journal, at 26 states:

> The purpose of this bill is to alleviate the current crisis relating to the cost and availability of commercial liability insurance.

> Your Committee finds that rates for commercial liability insurance have increased dramatically during recent years to an extent that many businesses are now unable to purchase affordable insurance coverage.

commercial liquor suppliers which in turn would undoubtedly increase their liability insurance premiums.

In recent years, drunken driving accidents have raised the level of public concern for the need to reduce if not eliminate the devastating cause of loss of human life and limb on our highways. Our lawmakers have reacted to public sentiment by enacting more stringent laws and heavier penalties seeking solutions to the problem. However, whether some remedial measure can be found in further modifying the common law by shifting the burden and responsibility of injuries to minors resulting from their voluntary consumption of alcohol to the commercial seller of liquor is best left to the wisdom of the Legislature and its process.

It is within the legislature's province to weigh and balance the far reaching social, economic and legal consequences of modifying the common law as Appellant urges. At least two major concerns in contemplating such modification of the common law arise: (1) where existing law distinguishes between two groups of minors, i.e. those below eighteen years and those between eighteen to twenty years, should the latter group be included in the protected class when under the law, they are treated as adults in every other respect;[15] and (2) whether the legislature's expressed policy of reducing and stabilizing commercial insurance liability costs should be altered by expanding the liability of commercial liquor suppliers.

## III.

We turn now to that portion of the certified question of whether survivors of a deceased minor are precluded from suing the commercial liquor supplier under HRS § 663-3 (1985). In *Bertelmann*, we stated:

---

[15] *See supra* note 11.

The majority rule is that a plaintiff in a wrongful death action can only recover if the tortious harm the decedent suffered would have entitled the decedent to maintain an action against the defendant. That is, if the decedent's recovery was barred, so are his or her survivors' wrongful death action.

. . . .

The Survivors' loss of love and affection claims under HRS § 663–3 are derivative. As such, since Decedent had no cause of action against [commercial liquor supplier], the Survivors cannot pursue their wrongful death action. Accordingly, no wrongful death action accrued.

69 Haw. at 103, 735 P.2d at 935 (citations and footnote omitted).

Since we have concluded in the instant case that minors and/or their estates are precluded from suing the commercial liquor supplier, survivors of the deceased minor are likewise barred from pursuing a wrongful death action.

### IV.

While we sincerely sympathize with Appellant's tragic loss, based on the foregoing, we are compelled to answer the certified question in the affirmative.

*Ned Rowan* and *Paul Cunney* for Plaintiff–Appellant.
*Ronald G. S. Au* and *Connie G. W. Meredith* for Defendant–Appellee Silver Fox Bar.