871 P.2d 1235 (1992)
Michael S. MYERS, Individually and as Special Administrator of the Estate of Marla Colleen Myers, Deceased, Plaintiff-Appellant,
v.
SOUTH SEAS CORPORATION, a Hawaii corporation, dba Rudy's Italian Restaurant and Hideaway Lounge, and Outrigger Hotels Hawaii, Inc., dba Outrigger Surf Hotel, Defendants-Appellees, and
Lautusi Taua and John Does 1-10, Defendants.
Nos. 15086, 15117.
Intermediate Court of Appeals of Hawaii.
May 14, 1992.
As Amended on Grant of Reconsideration June 1, 1992.
Certiorari Granted June 19, 1992.
*1237 Stacy Moniz (David C. Schutter and Paul D. Hicks, with him on the briefs; Schutter & Glickstein, of counsel), Honolulu, for plaintiff-appellant.
David J. Dezzani (Margaret C. Jenkins, with him on the brief; Goodsill Anderson Quinn & Stifel, of counsel), Honolulu, for defendant-appellee South Seas Corp.
Kari A. Wilhelm (Arthur F. Roeca, with her on the brief; Roeca, Louie & Hiraoka, of counsel), Honolulu, for defendant-appellee Outrigger.
Before BURNS, C.J., and HEEN, J., and CRANDALL, Circuit Judge by Reason of Vacancy.[*]
HEEN, Judge.
Plaintiff-Appellant Michael S. Myers (Myers), individually and as special administrator of the estate of Marla Colleen Myers (Marla), appeals from the December 19, 1990 judgment in favor of Defendants-Appellees South Seas Corporation, dba Rudy's Italian Restaurant and Hideaway Lounge (Rudy's), and Outrigger Hotels Hawai`i, Inc. (Outrigger), dba Outrigger Surf Hotel (Hotel), and the February 1, 1991 order denying his motion to amend the judgment or in the alternative *1238 for a new trial.[1] We vacate the judgment in favor of Rudy's and remand Myers' claim against Rudy's for retrial. We affirm the judgment in favor of Outrigger.
On December 25, 1986, at approximately 2:00 a.m., Marla arrived at Rudy's, which is located in the Hotel, accompanied by Gordon Wesley Sodorff (Sodorff). Defendant Lautusi Taua (Taua) was in Rudy's at the time. Taua had with him a six-foot inflatable Godzilla doll.
Marla and Sodorff went to the bar in Rudy's, where Marla ordered a glass of wine. Before she could be served, Marla began to circulate among the tables greeting friends. Within a very short time, Marla was engaged in an altercation with Taua, during which they were shouting at each other. It is unclear how the altercation started; however, it appears that Marla slapped Taua's doll and knocked it over. Marla returned to the bar, but the two continued to exchange words. Taua approached Marla at the bar and slapped her. Marla slapped back and Taua punched her, knocking her off her bar stool. Taua punched Marla again as she fell. While Marla was on the ground, Taua appeared to stomp on her head. Rudy's bartender, Bruce Spewak (Spewak), and another customer, Brian Dragger (Dragger), pulled Taua away from Marla. Marla then left Rudy's through a back stairway and door leading to the Hotel lobby. Shortly after that, Spewak and Dragger let Taua go, and Taua left through the front door leading to the street.
While the altercation was going on, another patron informed the Hotel's night auditor, who was upstairs in the lobby area, that a fight was occurring in the bar. The night auditor called the Outrigger's private security dispatcher at the Outrigger Prince Kuhio Hotel some four blocks away and requested that security personnel be sent. Although Outrigger, which owns a number of hotels in the Waikiki area, maintained a security staff, it did not station security personnel at each hotel. Instead it maintained a dispatch center for routing its security personnel to its hotels when needed.
Shortly thereafter, Marla entered the lobby and asked the night auditor to call security or the police. The night auditor and Marla were standing in the front entrance of the Hotel waiting for security to arrive when Taua emerged from Rudy's onto the street. The Hotel's front entrance is quite close to Rudy's front entrance.
Taua began walking off carrying his doll, then turned and walked up to Marla and the night auditor. As he approached, Taua twice said to Marla: "Don't ever do that to me again." When he got to Marla, he pushed her. She fell backwards, and her head hit the concrete floor. As Marla lay there, Taua kicked her three or four times.
Outrigger's security guards (guards) arrived as Taua was kicking Marla. Taua walked away, but was stopped and held by the guards until the police arrived.
Marla was confined in a hospital for injuries suffered from Taua's attack. She died several days later when life support systems were removed. Dr. Gonzalo Chong testified that the blows Marla received in either confrontation could have been the cause of her death.
Myers filed the initial complaint on May 18, 1987, and an amended complaint on May *1239 9, 1989. In his second amended settlement conference statement filed on September 12, 1990, Myers outlined his theories of liability as follows:
[Rudy's] a. Negligent sale of alcoholic beverage in violation of Hawai`i Revised Statutes (HRS) § 281-78(a)(2)(B) (1985).
b. Failure to exercise reasonable care to protect its patrons from harm.
c. Failure to provide proper and/or adequate security.
d. Creation of a false appearance of safety upon which [Marla] relied.
e. Negligence.
[Outrigger] a. Failure to provide adequate and proper security.
b. Negligence.
The jury rendered a special verdict in which it found that Outrigger was not negligent and that Rudy's was negligent; however, it found that Rudy's negligence was not "a legal cause of injury to the Plaintiff[.]" Judgment was entered on December 19, 1990. On January 17, 1991, Myers filed a notice of appeal from the judgment.

I.
Myers' first argument on appeal is an attack on the court's charge to the jury. Specifically, Myers argues that the court erred in giving instructions no. 16 (instruction no. 16) and 51 (instruction no. 51) and refusing to give Myers' requested instructions no. 11 (instruction no. 11) and 40 (instruction no. 40).
In reviewing the trial court's charge to the jury, the instructions must be considered as a whole. SGM Partners v. The Profit Co., 8 Haw.App. 86, 793 P.2d 1189, aff'd in part, rev'd in part on other grounds, 71 Haw. 506, 795 P.2d 853 (1990). The function of jury instructions is to inform the jury of the law applicable to the case. Campbell v. Hipawai Corp., 3 Haw.App. 11, 639 P.2d 1119 (1982). The question is not whether the instructions were technically correct but whether the appellant could have suffered prejudice on their account. In re Estate of Lorenzo, 61 Haw. 236, 602 P.2d 521 (1979). In determining the sufficiency of a particular instruction, it is not to be considered apart from its context or the rest of the charge. Id.
We note, at the outset, that we have examined the instructions as a whole and found that they correctly informed the jury of the law of negligence to be applied by them to the evidence. Nevertheless, since we are remanding Myers' claim against Rudy's for retrial, we will discuss Myers' arguments regarding the instructions noted above.

Instructions No. 16 and No. 40
Myers asserts that the trial court erred in giving instruction no. 16 and refusing his instruction no. 40. The instructions, respectively, read as follows:
COURT'S INSTRUCTION NO. 16
Violation of a statute may be considered by you in determining whether, taken together with all of the other evidence in the case, there was negligence on the part of the violator. Whether there was any violation of a statute and the effect thereof is for you to determine.
Under the statutes of the State of Hawai`i, a cocktail lounge operator must exercise reasonable care to prevent or suppress any violent, quarrelsome, disorderly or unlawful conduct of any person on its premises.
[MYERS'] JURY INSTRUCTION NO. 40
At no time under any circumstances shall any bar operator knowingly permit any person under the influence of liquor or disorderly person to be or remain on the bar's premises.
The thrust of Myers' argument is that instruction no. 16 is an incorrect statement of *1240 the law as expressed in HRS § 281-78(b)(2) (1985), while instruction no. 40 correctly states the law set forth in HRS § 281-78(b)(1) (1985). HRS § 281-78(b)(1) and (2) provide:
(b) At no time under any circumstances shall any licensee:
(1) Knowingly permit any person under the influence of liquor or disorderly person to be or remain in or on the licensed premises;
(2) Fail immediately to prevent or suppress any violent, quarrelsome, disorderly, lewd, immoral or unlawful conduct of any person on the premises[.]
Myers argues that (1) since the evidence shows that Rudy's had notice that Marla was under the influence of liquor,[2] it should have removed her from the premises immediately, as required by HRS § 281-78(b)(1), and (2) Rudy's did not take immediate steps to quell the altercation between Marla and Taua, as required by HRS § 281-78(b)(2).[3] Myers contends that the court should have instructed the jury in the language of the statutory provisions.
The question is whether a violation of either statutory provision may be evidence of negligence. Our appellate courts have not had occasion to consider that question. The supreme court has done so, however, with regard to other provisions of HRS § 281-78.
In Ono v. Applegate, 62 Haw. 131, 612 P.2d 533 (1980), the supreme court held that a third party injured in a collision with an automobile driven by an intoxicated driver who had earlier that evening been furnished liquor by the defendant's bar, when the bar knew that the driver was already under the influence of liquor, was within the class of persons protected by HRS § 281-78(a)(2)(B) (1976) and could recover damages for his injuries from the defendant bar owner. Under HRS § 281-78(a)(2)(B), a liquor licensee was prohibited from selling or furnishing liquor to "[a]ny person at the time under the influence of liquor."
In Bertelmann v. Taas Associates, 69 Haw. 95, 735 P.2d 930 (1987), a customer of a bar was killed shortly after he left the bar while driving alone in a car that crashed on a highway in Kona. The administrator of the decedent's estate and the decedent's survivors sued the owner of the bar for the decedent's wrongful death. The evidence showed that when the bar furnished liquor to the decedent before the crash, it knew or should have known that the decedent was already under the influence of liquor. The trial court granted the defendant's motion to dismiss for failure to state a claim. Id.
On appeal, the supreme court "emphatically reject[ed] the contention that intoxicated liquor consumers can seek recovery from the bar or tavern which sold them alcohol. Drunken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis." Id. at 100, 735 P.2d at 933.
The supreme court held that
HRS §§ 281-78(a)(2)(B) and 281-78(b)(1)[4] were created to protect the general public from drunk driving accidents, not to reward intoxicated liquor consumers for the consequences of their voluntary inebriation.... Liquor consumers are not within the class of persons for whose benefit HRS §§ 281-78(a)(2)(B) and 281-78(b)(1) were *1241 enacted. Sheraton Hotel's statutory violations did not create a cause of action in favor of Appellants.
We realize a bar or tavern owes a duty to avoid affirmative acts which increase the peril to an intoxicated customer.... But, in the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises, of itself, does not constitute actionable negligence.
Id. at 101, 735 P.2d at 934 (citations omitted and footnote added).
In Winters v. Silver Fox Bar, 71 Haw. 524, 797 P.2d 51 (1990), the United States District Court for the District of Hawai`i certified the following question to the supreme court:
Whether the sale of liquor to a minor (in violation of Hawai`i Rev.Stat. § 281-78(a)(2)(A) [1985 and Supp.1989][5] who subsequently becomes drunk and sustains injury precludes the minor (or the estate and survivors) from suing the commercial liquor supplier.
Id. at 525, 797 P.2d at 51-52 (footnote omitted and footnote added). The supreme court answered in the affirmative, holding that a minor who sustains injury due to his or her own voluntary intoxication is not within the class of persons protected under the statute. The supreme court stated that
absent legislative intent or public policy to change the common law and allow a tort right of action utilizing regulatory and criminal statutes to establish duty and conduct of care, the courts refuse to judicially legislate.
Id. at 529, 797 P.2d at 53.
Myers argues that Ono, Bertelmann, and Winters are not applicable because they involve patrons under the influence of intoxicating liquor who were involved in traffic accidents after they had left a bar. Here, of course, Marla was still in the bar when she was injured.
We acknowledge the distinction. Nevertheless, the principle established in those cases regarding reliance on a regulatory statute to establish negligence is applicable here. Marla was under the influence of liquor and disorderly; she was clearly a participant in the altercation with Taua and was not within the class of persons protected by the liquor licensing statutes. Thus, the court did not err in refusing to give instruction no. 40 or to quote HRS § 281-78(b)(2) in instruction no. 16. We now turn to the question whether instruction no. 16 correctly stated the law.
Instruction no. 16 was internally inconsistent in that, although it informed the jury that if they found that the statute was violated they could find that the violation was negligence, it did not instruct the jury as to the duty actually imposed by any statute. Instead, it instructed the jury that the duty owed was the duty of reasonable care.
Nevertheless, Myers was not harmed by the instruction, since instruction no. 16 correctly stated Rudy's duty to its patrons, including Marla. The general rule is that proprietors of bars or taverns owe their customers the duty of exercising reasonable care to protect them from injury at the hands of other patrons. Thomas v. Bruza, 151 Cal. App.2d 150, 311 P.2d 128 (1957); Worth v. Stahl, 388 So.2d 340 (Fla.App.1980); Filas v. Daher, 300 Minn. 137, 218 N.W.2d 467 (1974); Klingbeil v. Truesdell, 256 Minn. 360, 98 N.W.2d 134 (1959); 45 Am.Jur.2d Intoxicating Liquors § 557 (1969).

Instruction No. 11
The trial court correctly refused to give the jury instruction no. 11, which reads as follows:
You are instructed that the independent acts of Defendant LAUTUSI TAUA do not excuse any other Defendants from liability if the other Defendant failed to exercise reasonable care to protect MARLA COLLEEN MYERS and that failure to exercise reasonable care created a reasonably foreseeable risk of harm to MARLA COLLEEN MYERS.
*1242 Instruction no. 11 is based on the doctrine of superseding cause in tort law. Rudy's and Outrigger argue that instruction no. 11 was correctly denied, since superseding cause was not an issue in this case. We agree.
Neither defendant in this case claimed that Taua's acts were a superseding cause of Marla's injury which relieved them of liability. Moreover, in instruction no. 45 the court told the jury that it had already determined Taua's liability, that the liability of each defendant was to be considered separately, and that the jury's duty was to determine whether Rudy's or Outrigger was negligent and, if so, whether such negligence was the legal cause of Marla's injuries and death. In instruction no. 29, the court instructed the jury on legal cause.[6] The instruction stated that the conduct of more than one person may operate independently or together to cause an injury, in which case each may be a legal cause of the injury. The jury was properly instructed on the issue of legal cause. Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 742 P.2d 377 (1987) (negligent conduct is the legal cause of harm if it is a substantial factor in bringing about the harm).

Instruction No. 51
Instruction No. 51 provides:
If under all the circumstances there is an unreasonable risk of physical harm to a patron of a cocktail lounge or a person on hotel premises from the conduct of a third person, whether intentional or criminal, and if such risk of harm was reasonably foreseeable by the cocktail lounge or hotel in sufficient time through the exercise of reasonable care to have prevented such harm, then a failure to exercise reasonable care to prevent such harm is negligence.
Myers argues that the court erred in giving instruction no. 51 because it mixes duty, breach of duty, and causation. He contends that, under instruction no. 51, if the jury found a breach of duty, i.e., "a failure to exercise reasonable care to prevent such harm[,]" it would impliedly find causation; however, instruction no. 51 does not mention causation; it only allows the jury to establish breach of duty.
Outrigger argues that (1) instruction no. 11 is a correct statement of the law, and (2) Myers did not raise a proper objection in the lower court. We have examined the record and find that Myers' objection was not so far afield that it deprived him of the issue on appeal.
Considered in the light of the charge as a whole, instruction no. 51, while not a paradigm of legal precision, was not prejudicial to Myers. Even if the jury only understood the instruction as relating to duty and breach of duty, the other instructions adequately instructed them on causation.

II.
Myers' second argument is that the special verdict returned by the jury with regard to Rudy's was irreconcilably inconsistent. We agree.
The pertinent provisions of the special verdict form, and the jury's answers, are as follows:

SPECIAL VERDICT
1. Was the Defendant RUDY'S HIDEAWAY LOUNGE negligent?
ANSWER: Yes X No _
If your answer to question No. 1 is "No", then do not answer Question No. 2. Go directly to Question No. 3.
2. Was Defendant RUDY'S HIDEAWAY LOUNGE'S negligence a legal cause of injury to the Plaintiff?

*1243 ANSWER: Yes _ No X
An appellate court will order a new trial when the jury's answers to interrogatories posed on a special verdict form are irreconcilably inconsistent. Kalilikane v. McCravey, 69 Haw. 145, 737 P.2d 862 (1987). However, the verdict will not be disturbed if the answers can be reconciled under any theory. Hauenstein v. Loctite Corp., 347 N.W.2d 272 (Minn.1984).
Myers argues that under the court's instructions no. 46, relating to the duty of care owed by the defendants in this case,[7] no. 51, relating to the standard of care, and no. 29, relating to legal cause,[8] in order for the jury to find Rudy's negligent, it had to have found that an unreasonable risk of harm to Marla was foreseeable and that Rudy's had time to act to prevent that harm. Since the jury found Rudy's had time to act, it had to find that Rudy's failure to act was a legal cause of the harm suffered by Marla.
Rudy's argues, however, that, since negligence and legal cause are separate legal and factual requirements, the jury's findings are reconcilable under the facts in this case. Rudy's contends that the jury may have found that Rudy's was negligent in not providing a bouncer on the premises, but that the events occurred so rapidly that the jury could also have found that the omission was not the legal cause of the harm, since a bouncer would not have changed the outcome.
The fallacy of Rudy's argument lies in the fact that, under instruction no. 51, in order for the jury to find that Rudy's was negligent, it had to find that the risk of harm to Marla was foreseeable in sufficient time for Rudy's to have prevented it. Since the jury found there was time for Rudy's to have prevented the harm, the jury had to find that Rudy's omission was a legal cause of Marla's injury.
Rudy's further argues that the jury could have found it negligent under instructions no. 23, a general negligence instruction,[9] and no. 24, a definition of reasonable care.[10] However, those are general instructions that are not specifically related to the evidence in this case. It is more reasonable to infer that the jury was guided by and applied the instructions relating to the duty and breach of duty of a cocktail lounge.
The only possible way of reconciling the special verdict is to infer that, although the jury found Rudy's negligent, it did not find Rudy's negligence was a substantial factor in causing harm to Marla. However, as stated earlier, under instruction no. 51, the jury had to find that the harm to Marla was preventable in order to find Rudy's negligent. Thus, Rudy's negligence was a failure to prevent preventable harm and had to be a substantial factor in causing that harm.

III.
A hearing was held on an in limine motion by Rudy's to preclude Myers from introducing Sodorff's and Dragger's opinions on Spewak's actions at the time of the incident. Myers asserts that the court erred in ruling that the opinions would not be allowed.
*1244 Myers intended to present Sodorff's testimony through his deposition. The court ruled that the following emphasized portions of Sodorff's deposition testimony would be excluded.
Q. You actually looked to the bartender?
A. Yeah, I said, "Get this thing broken up. Call the police."
Q. And what did he do?

A. He very slowly reacted, I thought, for [sic] under the circumstances.

* * * * * *
Q. Now you stated that you believed in your own opinion that under the circumstances the bartender reacted slow?

A. Or either that  he was big enough that he should have gotten the guy thrown out of there, which he finally did get accomplished.

* * * * * *
Q. So in your opinion that would be the proper thing to do under those circumstances, would be to call the police.

A. The first thing I would have done if I would have been tending bar would be to call the police immediately, called security and escorted him out. I've tended bar before, so that's what I would have done exactly.

Sodorff did not testify, and the emphasized testimony was not admitted.
After reviewing Dragger's deposition testimony during the same hearing, the court stated that it did not think Dragger should be allowed to give his opinion regarding whether the police should have been called. The court's precise ruling on Dragger's testimony is unclear from the record, and Rudy's counsel did not prepare a written order. However, the following excerpt from Dragger's deposition testimony had been the subject of the discussion at the hearing:
Dragger's Deposition Testimony
Q. In your mind at that point, the confrontation was going to be over, you thought?
A. I thought it was, but I didn't want to let him go. I thought after what I saw happen that we should hold him and call the police. But Bruce said let him go.
Q. When you said "call the police," you thought the police should be called?
A. Yeah, because of what he did.
Q. Because of what he had already done?
A. Right. He jumped on her head. I think that's reason to call the cops.
At trial, Dragger was not allowed to testify that he believed the police should have been called after Taua attacked Marla.
Myers argues that the disputed evidence was admissible under Rule 701, Hawai`i Rules of Evidence (HRE), Chapter 626, HRS (1985).[11] Myers also contends that his witnesses should have been allowed to counter Rudy's employees' testimony that their actions were reasonable under the circumstances.
The admission of evidence lies within the discretion of the trial court, and the court's decision will be overturned only where there has been a clear abuse of discretion. Yorita v. Okumoto, 3 Haw.App. 148, 643 P.2d 820 (1982). Abuse of discretion is shown when the court's decision clearly exceeded the bounds of reason or disregarded principles of law. Title Guaranty Escrow Services, Inc. v. Powley, 2 Haw.App. 265, 630 P.2d 642 (1981).
*1245 The question is whether the opinion testimony would have been helpful to the jury in the determination of a fact in issue. Rule 701, HRE. The opinion of both witnesses related to events that took place after Taua's initial assault on Marla. Marla had already been knocked off the bar stool when Sodorff spoke to Spewak and when Dragger and Spewak pulled Taua away. Consequently, the testimony was not relevant to the issue of whether Rudy's exercised reasonable care to protect Marla from the unreasonable risk of harm from Taua's initial assault. While Dragger's testimony had some relevance to whether Spewak acted reasonably in releasing Taua rather than holding him for the police, we are not convinced, under all the circumstances of this case, that the trial court abused its discretion in excluding the testimony.

IV.
We reject Myers' argument that the lower court erred in not admitting Honolulu Police Department statistics relating to the incidence of crime in the Waikiki area. Myers' purpose in seeking to introduce the evidence was to show that the Hotel was in a high crime area and that Outrigger was negligent in failing to provide adequate security to protect persons lawfully on the Hotel's premises. Although the court originally refused to allow the statistics into evidence, the court reconsidered its ruling during Outrigger's case in chief when Outrigger's security chief testified that the Hotel is located in a low crime area. However, Myers did not avail himself of the court's change of mind and made no effort to renew his request for introduction of the statistics.[12]

CONCLUSION
We take up, now, the question of the relief to be accorded to Myers. In his opening brief, Myers requested that we amend the judgment to indicate that Rudy's negligence was the legal cause of Myers' harm and enter judgment accordingly. In the alternative, Myers requested a new trial on liability and affirmance of the jury's award of damages.
We reject Myers' request for entry of judgment in his favor. Causation is an essential factual element of negligence which is for the jury to decide. The evidence on causation in this record is not so clear that it can be said as a matter of law that causation has been established. See McKenna v. Volkswagenwerk Aktiengesellschaft, 57 Haw. 460, 558 P.2d 1018 (1977).
On the record in this case, the issue of liability is sufficiently separate from the question of damages so that we may exercise our discretion and remand Myers' claim against Rudy's for a retrial on the issue of liability only. Kojima v. Uyeda, 2 Haw.App. 172, 175, 628 P.2d 208, 211 (1981). Moreover, since neither the sufficiency of the evidence to support the jury's determination of the damages suffered by Myers nor the adequacy of the damages have been questioned by any of the parties, we may affirm the amount of the award. See City & County of Honolulu v. Bishop Trust Co., 49 Haw. 494, 421 P.2d 300 (1966).
Accordingly, we affirm the judgment in favor of Outrigger. We vacate the judgment in favor of Rudy's and remand Myers' claim against Rudy's for a new trial on the issue of liability alone. The jury's award of damages is affirmed.
NOTES
[*] Circuit Judge Crandall was assigned to sit in the case prior to Watanabe, J., becoming a member of the Intermediate Court of Appeals.
[1] Defendant-Appellee Outrigger Hotels Hawai`i, Inc. (Outrigger), dba Outrigger Surf Hotel, argued below and in its answering brief that Plaintiff-Appellant Michael S. Myers' (Myers) motion to amend the judgment or in the alternative for a new trial was untimely because it was not served within ten days of the entry of the judgment as required by Rule 59, Hawai`i Rules of Civil Procedure (1980). Judgment was entered on December 19, 1990. The motion to amend the judgment or for a new trial was filed with the circuit court clerk on January 3, 1991, and was served on South Seas Corporation, dba Rudy's Italian Restaurant and Hideaway Lounge (Rudy's) that same day and on Outrigger on January 4, 1991. Rudy's did not raise this argument below or on appeal.

Outrigger's timeliness argument is correct. Escritor v. Maui County Council, Ltd., 2 Haw. App. 200, 629 P.2d 1146 (1981). Accordingly, we lack jurisdiction over the order denying the motion to amend the judgment or for a new trial, id., and we will consider only the appeal from the judgment.
[2] Rudy's cocktail waitress, Pam Watada (Pam), testified that Marla Colleen Myers (Marla) stepped on Pam's foot while Marla was moving around the bar and that Marla's speech was slurred and loud. Pam determined that Marla was "intoxicated" and told Rudy's bartender, Bruce Spewak, that she would not serve Marla.
[3] There is no indication in the record, and Myers does not claim, that Taua was under the influence of liquor or had been drinking.
[4] In 1990, the statute was amended. Hawaii Revised Statutes (HRS) §§ 281-78(a)(2)(B) and (b)(1) (1985 and Supp.1989), cited by the supreme court, are now HRS §§ 281-78(b)(1)(B) and (b)(5) (1985 and Supp.1991), respectively. Act 171, § 25, 1990 Haw.Sess.Laws 334, 351-52.
[5] HRS § 281-78(a)(2)(A) is now § 281-78(b)(1)(A). See supra note 4.
[6] Instruction no. 29 reads as follows:

An act or omission is a legal cause of an injury if it was a substantial factor in bringing about the injury.
The law does not say that there can be only one substantial factor which causes an injury. On the contrary, many factors, or the conduct of more than one person, may operate independently or together to cause an injury. In such a case, each may be a legal cause of injury.
[7] Instruction no. 46 reads as follows:

A cocktail lounge has a duty of reasonable care to protect a patron from unreasonable risk of physical harm.
A hotel has a duty of reasonable care to protect a person, who is on its premises as a patron of a business being operated in the hotel, from unreasonable risk of physical harm.
[8] See supra note 6.
[9] Instruction no. 23 provides:

Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances shown by the evidence. It is the failure to use reasonable care.
[10] Instruction no. 24 provides:

Reasonable care is that care which persons of ordinary prudence would, under the circumstances shown by the evidence, exercise in the management of their own affairs in order to avoid injury or damage to themselves, or to others.
[11] Rule 701, Hawai`i Rules of Evidence, Chapter 626, HRS (1985), reads as follows:

Opinion testimony by lay witnesses. If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
[12] Myers attempted to establish a foundation for introducing the evidence through Outrigger's witness. However, the witness was unable to identify Myers' statistics and testified that he had not relied on those statistics in his testimony. Myers did not call his own witness to lay the foundation for the evidence.