ERIC KALEO HAILI BERTELMANN, as Administrator of the Estate of SOLOMON BOYD KELIIKOA, MARY KAPUA BERTELMANN KELIIKOA as Guardian Ad Litem for the unmarried minor SAULNETTE KAPUA PALENAPA, ERIC KALEO HAILI BERTELMANN, MARY KAPUA BERTELMANN KELIIKOA, and SAUL CLEGHORN KELIIKOA, Plaintiffs-Appellants, *v.* TAAS ASSOCIATES dba Sheraton Royal Waikoloa Hotel, a general partnership composed of Transcontinental Development Co., AtPac Land Co., Aetna Casualty & Surety Co., and the Sheraton Corporation, Defendant-Appellee

NO. 11459

(CIVIL NO. 86-195)

APRIL 14, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ

OPINION OF THE COURT BY HAYASHI, J.

Plaintiffs-Appellants (hereinafter collectively "Appellants") Eric Kaleo Haili Bertelmann (hereinafter "Bertelmann") as administrator of the estate of Solomon Boyd Keliikoa (hereinafter "Decedent") and the Decedent's survivors (hereinafter collectively the "Survivors") Mary Kapua Bertelmann Keliikoa as guardian ad litem for the unmarried minor Saulnette Kapua Palenapa, Bertelmann, Mary Kapua Bertelmann Keliikoa, and Saul Cleghorn Keliikoa appeal the order dismissing their complaint against Defendant-Appellee Taas Associates, doing business as Sheraton Royal Waikoloa Hotel (hereinafter "Sheraton Hotel"). Appellants had sued claiming Sheraton Hotel employees had served liquor to Decedent, causing him to become so drunk that he later crashed the car he was driving, thereby sustaining fatal injuries. Appellants contend the trial court erred by dismissing their complaint for failure to state a claim because 1) a common law dram shop action is available to them under *Ono v. Applegate*, 62 Haw. 131, 612 P.2d 533 (1980); and 2) even if Decedent's estate cannot maintain an action, his Survivors still possess a valid wrongful death claim. For reasons stated below, we decline to extend the applicability of *Ono* to the case at bar and therefore affirm the order of dismissal.

· I.

*Background Facts.*

The facts are not disputed. On the evening of March 24, 1985 or the early morning of March 25, 1985, Decedent was drinking alcoholic beverages at Sheraton Hotel on Hawaii. While driving his car alone later on March 25, 1985, Decedent crashed on the Queen Kaahumanu Highway in North Kona. No other persons or vehicles were involved. Decedent died on May 16, 1985 from injuries received in the accident.

On February 18, 1986, Bertelmann was named the Decedent's estate administrator. Thereafter on March 6, 1986, Appellants filed suit alleging, *inter alia:*

10. That on March 24-25, 1985 the Defendant TAAS ASSOCIATES sold or furnished liquor on the licensed prem-

ises of the Sheraton Royal Waikoloa Hotel to Solomon Boyd Keliikoa at a time when Defendant knew or should have known that Solomon Boyd Keliikoa was under the influence of liquor, and knowingly permitted Solomon Boyd Keliikoa while under the influence of liquor, to be or remain in or on the licensed premises, all in violation of Section 281-78(a)(2)(B) and (b)(1) of the Hawaii Revised Statutes.[1]

11. That as a result of the wrongful acts, misconduct, negligence and violation of law by the Defendant as hereinabove noted, Solomon Boyd Keliikoa sustained severe and grave injuries and grevious [sic] pain and suffering which resulted in his continued hospitalization from March 25, 1985 until May 16, 1985, when he died as a result of the inuries [sic] he sustained.

12. That the Defendant TAAS ASSOCIATES caused or is otherwise responsible for the death of Solomon Boyd Keliikoa.

13. That as a result of the death of Solomon Boyd Keliikoa, Plaintiffs suffered great emotional distress, pecuniary injury, including medical, hospital and burial expenses, and loss of love and affection, society, companionship, comfort, consortium, protection, parental care, training, guidance and education, as persons wholly or partly dependent upon Solomon Boyd Keliikoa, and the legal representative of Solomon Boyd Keliikoa is entitled to recover the future earnings of the decedent and the provision decedent would have made for his family and dependents during the period of time he would have lived but for the misconduct and negligence of the Defendant pursuant to Sections 663-3, 663-7 and 663-8 of the Hawaii Revised Statutes.

---

[1] The relevant parts of Hawaii Revised Statutes (hereinafter "HRS") § 281-78 (1985) read:

    (a) At no time under any circumstances shall any liquor:

    .   .   .   .

    (2) Be sold or furnished by any licensee to:

    .   .   .   .

      (B) Any person at the time under the influence of liquor,

    .   .   .

    (b) At no time under any circumstances shall any licensee:

    (1) Knowingly permit any person under the influence of liquor or disorderly person to be or remain in or on the licensed premises   .   .   .   .

15. That on March 24-25, 1985 the Defendant TAAS ASSOCIATES intentionally and/or negligently served Solomon Boyd Keliikoa intoxicating liquor until he was visibly and clearly intoxicated, and thereafter continued to serve him intoxicating liquor when Solomon Boyd Keliikoa was visibly and clearly intoxicated.

. . . .

18. That the Defendant TAAS ASSOCIATES acted in a grossly negligent manner, intentionally, willfully, and with reckless, conscious and deliberate disregard for the safety and welfare of Solomon Boyd Keliikoa causing and resulting in grievous pain and suffering to and the death of Solomon Boyd Keliikoa.

Record at 10-13, 87-90.

On April 23, 1986, Sheraton Hotel moved to dismiss Appellants' complaint for failure to state a claim under Hawaii Rules of Civil Procedure Rule 12(b)(6). Sheraton Hotel argued neither the common law nor *Ono* allowed a liquor consumer or the consumer's estate and survivors to sue the liquor seller under a dram shop theory of liability because 1) dram shop actions traditionally permitted only innocent third parties injured by drunken liquor consumers to sue the drunken liquor consumers, as well as the persons or establishments which furnished the alcoholic beverages; 2) in some jurisdictions where the courts ruled drunken consumers could sue the liquor providers, the state legislatures promptly enacted statutes abrogating the caselaw (for example, in California, Missouri, and South Dakota);[2] and 3) public policy was against extending the rationale of *Ono* (an innocent third party can sue the drunken consumer and the liquor provider) to the present case.

---

[2] In California, *Vesely v. Sager,* 5 Cal. 3d 153, 486 P.2d 151, 95 Cal. Rptr. 623 (1971), held an injured third party could pursue a dram shop action against the party who sold the drunken tortfeasor alcohol. Later, *Ewing v. Cloverleaf Bowl,* 20 Cal. 3d 389, 572 P.2d 1155, 143 Cal. Rptr. 13 (1978), established a bar patron's right to sue the bar for alcohol poisoning caused by the patron's excessive liquor consumption. That same year, the California legislature abrogated *Vesely* and *Ewing.* Similarly, the courts in *Selchert v. Lien,* 371 N.W.2d 791 (S.D. 1985), and *Sampson v. W.F. Enterprises,* 611 S.W.2d 333 (Mo. App. 1980), allowed liquor consumers (or their estates and survivors) to sue the liquor providers. The state legislatures of South Dakota and Missouri then abrogated the cases in 1985.

Appellants responded that 1) Sheraton Hotel was liable for breaching the statutory duty not to sell liquor to the already intoxicated Decedent under Hawaii Revised Statutes (hereinafter "HRS") §§ 281-78(a)(2) and 281-78(b)(1)(1985); 2) several jurisdictions have allowed liquor consumers to sue liquor providers; and 3) Sheraton Hotel's interpretation of *Ono* was too restrictive.

The trial court conducted a hearing on May 21, 1986, and granted Sheraton Hotel's motion to dismiss. Appellants then timely appealed.

## II.

### Common Law Dram Shop Action.

Though pleadings should be construed liberally and not technically and a motion to dismiss for failure to state a claim should rarely be granted, a complaint may be dismissed if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief. *Au v. Au,* 63 Haw. 210, 626 P.2d 173, *aff'd,* 63 Haw. 263 (1981). The question posed here is whether this court, after balancing the policy considerations to allow recovery against those factors limiting liability, should rule that Sheraton Hotel owed a duty to Appellants under the guidelines established in *Ono. See Cootey v. Sun Investment, Inc.,* 68 Haw. ____, 718 P.2d 1086 (1986); *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. 185, 659 P.2d 64 (1983).

The facts of *Ono* are as follows. On May 19, 1973 on Maui, Samantha Scritchfield drank at the Sand Trap tavern owned by defendant H. Jon Applegate, drove away, and crashed into the car in which plaintiff Masaichi Ono was riding. Ono was injured, and Scritchfield died. Ono sued Scritchfield's estate and Applegate averring that the Sand Trap had negligently served liquor to an already intoxicated Scritchfield and had negligently allowed her to leave the premises intoxicated. The jury returned a verdict finding Scritchfield 75% at fault and the Sand Trap 25% at fault. 62 Haw. at 132-33, 612 P.2d at 536. On appeal, we affirmed ruling 1) Ono was within the class of persons protected by HRS § 281-78(a)(2)(B); and 2) the Sand Trap's statutory violation breached the standard of care so was evidence of negligence which could be used to prove

causation. 62 Haw. at 138, 612 P.2d at 539. By establishing a common law dram shop action, a commercial liquor supplier could be held accountable for the failure to refrain from providing liquor to an intoxicated person. *Id.* at 136 n.5, 612 P.2d at 538 n.5. *Ono* emphasized the need to deter violations of HRS § 281-78(a)(2)(B), prevent the reasonable foreseeable consequences of the violations (i.e. drunk driving accidents), and compensate innocent third parties. 62 Haw. at 137-38, 612 P.2d 538-39.

Some confusion, however, has resulted over whether *Ono* extends the availability of a common law dram shop action to an inebriated liquor consumer. That is, "to ensure that liquor licensees would honor their responsibilities to the public [not to sell alcohol to already drunken customers]," do liquor consumers who are injured because of their intoxication possess a common law dram shop action against the commercial liquor sellers who violate HRS § 281-78(a)(2)(B)? Note, *Ono v. Applegate: Common Law Dram Shop Liability,* 3 U. Haw. L. Rev. 149, 158 (1981). We now answer no.

We agree with the majority of jurisdictions that have passed on this issue and emphatically reject the contention that intoxicated liquor consumers can seek recovery from the bar or tavern which sold them alcohol. Drunken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis. *Wright v. Moffit,* 437 A.2d 554 (Del. 1981).

In *Allen v. County of Westchester,* 109 A.D.2d 475, 492 N.Y.S.2d 772 (1985), the decedent became drunk at a community college bar, fell, and sustained fatal injuries. The trial court denied the defendant county's motion to dismiss the plaintiff's common law negligence claims. The appeals court reversed reasoning:

> [N]o cause of action for decedent's conscious pain and suffering exists as against the county. *To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results "would savor too much of allowing [said] person to benefit by his or her own wrongful act"* (see, Buntin v. Hutton, 206 Ill. App. 194, 199). A contrary holding in this case would result in a policy with far-rippling effects. The creation of such a policy, in our view, is better left to the legislative process.

*Id.* at 480, 492 N.Y.S.2d at 776 (emphasis added).

The *Allen* reasoning is highly persuasive. HRS §§ 281-78(a)(2)(B) and 281-78(b)(1) were created to protect the general public from drunk driving accidents, not to reward intoxicated liquor consumers for the consequences of their voluntary inebriation. *See Wright*, 437 A.2d at 557. Liquor consumers are not within the class of persons for whose benefit HRS §§ 281-78(a)(2)(B) and 281-78(b)(1) were enacted. Sheraton Hotel's statutory violations did not create a cause of action in favor of Appellants. *See Sager v. McClenden*, 296 Or. 33, 672 P.2d 697 (1983).

We realize a bar or tavern owes a duty to avoid affirmative acts which increase the peril to an intoxicated customer. *Thrasher v. Leggett*, 373 So. 2d 494 (La. 1979). But, in the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises, of itself, does not constitute actionable negligence. *Miller v. City of Portland*, 288 Or. 271, 604 P.2d 1261 (1980).[3]

We also recognize that a significant minority of jurisdictions have imposed a common law duty or have interpreted their dram shop statutes to allow a suit by an injured liquor consumer against the parties who furnished the liquor. *See Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965). These jurisdictions have ruled that a tavern keeper owes a duty not to serve an already intoxicated patron more liquor where unreasonable risk caused by drunken conduct is readily foreseeable, *Soronen v. Olde Milford Inn*, 84 N.J. Super. 372, 202 A.2d 208 (1964), so the causal connection between the defendants' unlawful failure to stop providing alcohol to an inebriated

---

[3] *Miller* involved the illegal sale of liquor to a minor. We do not decide in this appeal whether the sale of liquor to a minor (in violation of HRS § 281-78(a)(2)(A)) who subsequently becomes drunk and sustains injury precludes the minor (or the estate and survivors) from suing the commercial liquor supplier. At least one jurisdiction has ruled that public policy, to prevent alcohol abuse by immature and inexperienced minors, requires those who illegally furnish liquor to minors be held legally accountable. *See Trujillo v. Trujillo*, 104 N.M. 379, 721 P.2d 1310 (N.M. Ct. App.), *cert. denied*, 104 N.M. 289, 720 P.2d 708 (N.M. 1986). However, the majority of cases, like *Miller*, makes no distinction between minors and adults and rules that, under common law and/or statute, neither minors nor adults who hurt themselves after becoming intoxicated possess a cause of action against whoever provided them with liquor. *See Sutter v. Hutchings*, 254 Ga. 194, 327 S.E.2d 716, *on remand, Sutter v. Turner*, 174 Ga. App. 743, 332 S.E.2d 175 (1985); *Ruth v. Benvenutti*, 114 Ill. App. 3d 404, 449 N.E.2d 209 (1983).

consumer and the consumer's later harm is a jury question. *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959). The defendant can then raise the affirmative defenses of contributory negligence or assumption of the risk to reduce or negate fault. *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983); *Bissett v. DMI, Inc.,* ____ Mont.____, 717 P.2d 545 (1986).

Based on a thorough review of the relevant caselaw, though, we adhere to the majority view and restrict the applicability of *Ono.*

### III.

#### *The Survivors' Cause of Action.*

Appellants assert that, even if Bertelmann, as administrator of Decedent's estate, cannot maintain an action, Decedent's Survivors can recover under an independent cause of action for wrongful death pursuant to HRS § 663-3 (1985).[4] This point, however, was not raised below in the pleadings, memorandum in opposition to the motion to dismiss, or in the hearing on the motion to dismiss. Appellants are thus improperly arguing a new issue on appeal for the first time.

---

[4] This statute reads:

*Death by wrongful act.* When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person causing the death or against the person responsible for the death. The action shall be maintained on behalf of the persons hereinafter enumerated, except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial.

In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including (1) loss of society, companionship, comfort, consortium, or protection, (2) loss of marital care, attention, advice, or counsel, (3) loss of filial care or attention, or (4) loss of parental care, training, guidance, or education, suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damages recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased. Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

A judgment will not ordinarily be reversed based on a theory an appellant failed to raise at the trial level unless justice so requires. *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 56 Haw. 466, 540 P.2d 978 (1975). Because the existence of the Survivors' cause of action is of public importance and does not require additional facts, though, we will consider this issue. *See Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568 (1973).

Appellants' proposition that Decedent's Survivors, as plaintiffs in a wrongful death action under HRS § 663-3, may recover even though Decedent's estate cannot, is clearly misplaced. The majority rule is that a plaintiff in a wrongful death action can only recover if the tortious harm the decedent suffered would have entitled the decedent to maintain an action against the defendant. *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976). That is, if the decedent's recovery was barred, so are his or her survivors' wrongful death action. *Id.*

In *Nolan v. Morelli*, 154 Conn. 432, 226 A.2d 383 (1967), the decedent died after consuming too much liquor, and the plaintiff brought suit against the defendant liquor sellers. Because the decedent had no cause of action against the defendants, the Connecticut Supreme Court ruled the plaintiff, standing in the decedent's shoes, also lacked one. *Id.*

The Survivors' loss of love and affection claims under HRS § 663-3 are derivative. *See Hun v. Center Properties*, 63 Haw. 273, 626 P.2d 182 (1981). As such, since Decedent had no cause of action against Sheraton Hotel, the Survivors cannot pursue their wrongful death action. *See Towse v. State*, 64 Haw. 624, 647 P.2d 696 (1982), and *Doi v. Hawaiian Insurance & Guaranty Co.*, 6 Haw. App. ____, 727 P.2d 884 (1986) (if a party cannot maintain a personal injury claim, then the spouse's derivative consortium action must also fail). Accordingly, no wrongful death action accrued.[5]

---

[5] Under HRS § 663-7 (1985), only those causes of action the decedent possessed survive for his or her estate. *Greene v. Texeira*, 54 Haw. 231, 505 P.2d 1169 (1973). This statute reads:

> *Survival of cause of action.* A cause of action arising out of a wrongful act, neglect, or default, except a cause of action for defamation or malicious prosecution, shall not be extinguished by reason of the death of the injured person. The cause of action shall survive in favor of the legal representative of the person and any damages recovered shall form part of the estate of the deceased.

Affirmed.

*Ira Leitel,* for Plaintiffs-Appellants.

*Kenneth A. Ross (Linda Nuland-Ames* with him on the brief; *Goodsill, Anderson, Quinn & Stifel,* of counsel), for Defendant-Appellee.