**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2005**

**PATRICK FISHER**
**Clerk**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RENNA PEHLE and GARY W. PEHLE,

     Plaintiffs - Appellants,

v.

FARM BUREAU LIFE INSURANCE
COMPANY, INC.; LABONE, INC., a
Kansas corporation; J. ALEXANDER
LOWDEN, M.D.,

     Defendants - Appellees.

No. 03-8068

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(Civil No. 02-CV-112-J)**

---

David G. Lewis, Jackson, Wyoming, for Plaintiffs - Appellants.

R. Michael Mullikin, Mullikin, Larson & Swift LLC, Jackson, Wyoming, for Defendant-Appellee Farm Bureau Life Insurance Company, Inc.

David H. Yun, Jaudon & Avery LLP, Denver, Colorado, for Defendants - Appellees LabOne, Inc. and J. Alexander Lowden.

---

Before **TACHA**, Chief Judge, **HOLLOWAY** and **LUCERO**, Circuit Judges.

---

**LUCERO,** Circuit Judge.

Unbeknownst to Wyoming residents Gary and Renna Pehle, husband and wife, they were infected with the Human Immunodeficiency Virus ("HIV") at the time they applied for life insurance from Farm Bureau Life Insurance Company ("Farm Bureau") in 1999. At the time of the application, Farm Bureau collected the initial premium and arranged for blood tests from the Pehles in furtherance of the application. Blood samples were forwarded for analysis to an independent laboratory, LabOne, which in turn reported the HIV status to the insurance company. On receipt of the information, Farm Bureau sent a notice of rejection to the Pehles and advised them that it would disclose the reason for their rejection to their physician if they so wished. No action was taken by the Pehles.

Two years later, Renna Pehle was diagnosed with AIDS and on inquiry she and her husband learned that Farm Bureau records showed the HIV infection at the time of the life insurance rejection. The Pehles sued, alleging that the defendants were negligent in failing to tell them they were HIV-positive. In considering the Pehles' negligence action, the District Court found no duty on the part of Farm Bureau, LabOne, or J. Alexander Lowden, LabOne's Medical Director, and granted summary judgement to all. We agree with the decision as to LabOne and J. Alexander Lowden, but disagree as to Farm Bureau.

## I

We begin our study of the tragedy that shapes this case at the point the Pehles applied for life insurance and Farm Bureau transmitted their blood specimens to LabOne.

2

LabOne is a Kansas corporation and the largest single-site diagnostic testing laboratory in the United States. It provides lab services to insurance companies and employers throughout the country. When LabOne reported the Pehles' HIV status to Farm Bureau, it also did so to the Kansas Department of Health, as required by Kansas law. In its letter denying coverage, Farm Bureau advised each Plaintiff that the applications were denied based on blood results, and offered to send the results to the Pehles' physician upon written authorization, stating: "With your approval, we would be willing to send the results of the blood profile to your physician so that you can discuss the findings with them. Please write the name and address of the physician you want the blood report sent to at the bottom of this letter and return it to me in the enclosed envelope." The Pehles made no inquiry until Mrs. Pehle developed AIDS symptoms in June of 2001, at which point they contacted Farm Bureau and asked it to release the blood test results to their physicians. Farm Bureau duly complied with the request. The underlying action was then filed.

In its analysis of Farm Bureau's motion for Summary Judgment, the district court concluded that the Pehles' case raised no genuine question of material fact because Wyoming law would neither recognize a duty running from a life insurance company to its applicants, nor one running to those applicants from the laboratory hired by the insurance company to test the applicants' blood.

## II

In analyzing the Pehles' appeal, we review the grant of summary judgment de novo, applying the same standards used by the district court. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, we must construe the record liberally in favor of the party opposing the summary judgment. McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir. 1988).

## III

Because our jurisdiction is based on diversity of citizenship, and because the factual backdrop of this dispute occurred in Wyoming, we apply the substantive law of Wyoming.[1] Erie RR Co. v. Tompkins, 304 U.S. 64 (1938). Under Wyoming law, for negligence to lie, defendant must owe a duty to plaintiff, and defendant's breach of that

---

[1] The dissent argues that we should certify the question of an insurance company's duty to its applicants to the Wyoming Supreme Court. Although certification may be appropriate "where the legal question at issue is novel and the applicable state law is unsettled," Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir. 1990), it is never compelled. See Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974). To resolve this case, we need not announce any new rule of Wyoming common law. Although the application of Wyoming's law of negligence to insurance companies is not preordained, the state law approach itself is well settled. Each new fact pattern does not compel certification. Half the cases cited by the dissent questioning our state-law conclusion are federal diversity cases. Parties who choose to litigate in the federal forum "must ordinarily accept the federal court's reasonable interpretation of extant state law." Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 (10th Cir. 1996). Indeed, no party before us has suggested otherwise.

4

duty must be the proximate cause of the plaintiff's injuries. Duncan v. Afton, Inc., 991 P.2d 739, 742 (Wyo. 1999). Wyoming law imposes on Farm Bureau a limited duty to disclose. Whether Farm Bureau breached its duty, and whether any such breach proximately caused the Pehles' injuries, are questions of fact for a jury.

The Pehles argue that a life insurance company owes a duty under Wyoming common law to notify applicants that they are infected with a sexually transmitted disease when the infection is discovered in the application process. This argument goes farther than the law warrants. Farm Bureau asks us to uphold the lower court's conclusion that there can be no duty owed by an insurance company to mere applicants for its services. This, also, is unwarranted by Wyoming precedent. Balancing all the interests involved as Wyoming law requires, we are compelled to conclude that if an insurance company, through independent investigation by it or a third party for purposes of determining policy eligibility, discovers that an applicant is infected with HIV, the company has a duty to disclose to the applicant information sufficient to cause a reasonable applicant to inquire further.

**IV**

Duty under Contract

We are urged by the Pehles to hold that the Notice and Consent agreement they signed creates a duty on the part of Farm Bureau and LabOne to inform them of their HIV status. We decline to do so. The Notice and Consent agreement before us, in and of

5

itself, does not impose a duty upon Farm Bureau to disclose applicants' STD statuses upon discovering them. Similarly, LabOne is not subject to a duty created or suggested by the Notice and Consent agreement.

LabOne is not a party to the Notice and Consent, a form contract that authorizes "the testing of [applicant's] blood" (significantly not specifying who would do the testing), and provides that HIV testing "may be performed," and that if there are "abnormal test results which, in the Insurer's opinion, are significant," "the Insurer may contact" the applicant. Although there were conflicting assertions in the briefs as to who drew applicants' blood, at oral argument it appeared that all parties agreed that it was Farm Bureau and not LabOne that contracted with the nurse who collected the Pehles' samples. A Farm Bureau agent presented the form contract and the nurse sent by Farm Bureau was by the Pehles' side when they signed it. Although LabOne's logo appears at the top of the form and in the Copyright notice, the contract itself does not specify that LabOne would conduct the test. In the clause providing for the invalidity of any modifications or amendments made by the insured, the agreement provides that changes will not be binding "upon the insurance company or any of its agents or contractors." (Emphasis added.) As the Wyoming courts have held, "[i]t is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract." Worman v. Farmers Coop. Ass'n, 4 F. Supp.2d 1052, 1054 (D. Wyo. 1998) (adjudicating contract dispute under Wyoming law).

6

Unlike LabOne, Farm Bureau is a party to the Notice and Consent agreement. However, as noted, the agreement does not require the company to inform applicants of their STD status. The Pehles argue that the use of the word "may" in "may contact you" was intended to mean that applicants gave Farm Bureau permission to contact them, rather than expressing the mere possibility that they would be contacted. They also argue that they reasonably read the provision as establishing that the company's standard practice is to inform applicants of abnormalities, having thus requested applicants' permission to do so. A contextual reading of the clause, however, belies the Pehles' position. All other instances of permission employ the word "authorize." Also, in the same paragraph, "may" appears again, and is clearly expressing possibility, not permission: "The Insurer may ask you for the name of a physician or other health care provider." Even if the clause intended "may" to be permissive, permission is by definition not compulsion, and cannot be held to have created a duty on the part of Farm Bureau to inform the Pehles of their HIV status.

Duty under the Common Law

Because there is only the most attenuated relationship between the Pehles and LabOne, we cannot hold LabOne subject to a duty under a traditional common-law negligence theory. In contrast, the Pehles and Farm Bureau had a good deal of contact. Wyoming courts, however, have not decided whether an insurer has a common-law duty to disclose to insurance applicants the results of medical examinations which detect that

7

an applicant is suffering from a life-threatening or debilitating disease.  Because

Wyoming has not directly addressed this issue, this court must make an Erie-guess as to

how the Wyoming Supreme Court would rule.  See United Parcel Service v. Weben

Industries, 794 F.2d 1005, 1008 (5th Cir. 1986) ("when making an Erie-guess in the

absence of explicit guidance from the state courts, we must attempt to predict state law,

not to create or modify it.").  We are "free to consider all resources available, including

decisions of Wyoming Courts . . . [and] the general . . . trend of authority."  Stuart v.

Colorado Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001).

A duty arises when "a relation exists between the parties [such] that the

community will impose a legal obligation upon one for the benefit of the other. . . ."

Duncan 991 P.2d at 742.  All parties acknowledge that the list of "relations" under the

common law giving rise to a duty is not carved in stone.  Duncan (which involved a

laboratory that stored urine at the wrong temperature, leading to a false-positive alcohol

reading) provides the framework for examining such relationships to determine if a duty

arises.[2]

---

[2]  The dissent's contention that the eight factors Duncan borrows from Tarasoff v. Regents of Univ. of California, 551 P.2d 334 (Cal. 1976), constitute a "comprehensive eight-factor balancing test" is not supported by the wide-ranging analysis in which Duncan engages.  The Wyoming Supreme Court reviewed numerous cases from other jurisdictions.  Id. at 743-744.  It deemed relevant, inter alia, the eight factors laid out by the California Supreme Court in Tarasoff.  However, like the Tarasoff court itself, it brushed aside or ignored entirely those factors it presumably concluded were not helpful to the case at hand.  See Duncan, 991 P.2d at 744-45 (simply not addressing the "degree of certainty of injury" prong of Tarasoff).  This opinion similarly addresses those factors

8

Farm Bureau says that <u>Duncan</u> does not apply because of the traditional distinction between non-feasance and misfeasance and the concomitant common-law doctrine that there is generally no "duty to rescue." The company argues that the distinction between act and omission presents the analytical lens through which we should interpret <u>Duncan</u>, a "misfeasance" case, and that <u>Duncan</u> should therefore not be precedential on what we should consider to be a "non-feasance" case presently before us. They further argue that Farm Bureau and LabOne are in the position of a "rescuer" at common law, with no duty to help, and cannot be sued for not informing plaintiffs of their infection. Defendants' reasoning fails on two grounds.

Because defendants' actions in this case, like those in <u>Duncan</u>, could be characterized as either misfeasance or non-feasance, the distinction is not a useful one for our purposes. Putting HIV-positive applicants on notice of their infection could be considered a normal part of testing for HIV, just like keeping urine samples at the proper temperature is a normal part of alcohol-testing in <u>Duncan</u>. The wrong allegedly done to the Pehles could be characterized either as an omission in notification (non-feasance) or a negligently performed investigation into their HIV status (misfeasance).

Second, it is not clear whether Wyoming accepts the binary act/omission distinction in tort. Acknowledging that no reported Wyoming case has recognized as much, defendants nonetheless recite the Restatement rule that in the absence of a duty

_____

relevant to the disposition of the case at bar.

9

created through a special relationship or through contract, there is no duty to rescue. Section 314 of the Restatement (Second) of Torts lays out the four special relationships giving rise to a duty to protect another from harm as: "(1) carrier/passenger, (2) innkeeper/guest, (3) business invitor/invitee, and (4) voluntary custodian/protected." Farm Bureau's assertion that Wyoming has adopted the Restatement principles, ignores the Wyoming Supreme Court's holding that its precedent "does not . . . adopt or endorse Restatement (Second) of Torts § 314A." Drew v. LeJay's Sportsmen's Cafe, 806 P.2d 301, 304 (Wyo. 1991).

Simply because Wyoming has not adopted Restatement § 314 does not imply a general obligation on the part of Wyoming citizens zealously to guide toddlers away from scissors. It simply means that the approach to duty analysis taken by Wyoming courts is more nuanced. The Duncan Court framed the question before it in general terms, as "whether a duty should be imposed based on a particular relationship," Duncan, 991 P.2d at 744; it does not say that the analysis is inapplicable to non-feasance cases. Indeed, Tarasoff, the case on which Duncan in large part models its analysis, was a non-feasance, not a misfeasance, case that rejects the traditional distinction:

> [The no-duty rule] derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter. Morally questionable, the rule owes its survival to the difficulties of setting any standards of unselfish service to fellow men, and of making any workable rule to cover possible situations where fifty people might fail to rescue. Because of these practical difficulties, the courts have increased the number of instances in which affirmative duties are imposed not by direct rejection of the common law rule, but by expanding the list of special

10

relationships which will justify departure from that rule.

Tarasoff, 551 P.2d at 343. Duncan frames itself as having inquired, in the same manner as Tarasoff, whether there is the sort of "particular relationship" that justifies departure from the traditional no-duty rule. Duncan 991 P.2d at 744.

Under Wyoming law, then, the inquiry is about the relationship between the parties, and a confidential relationship is one "of trust and confidence" that is "implied in law due to the factual situation surrounding the involved transaction." Johnson v. Reiger, 93 P.3d 992, 999 (Wyo. 2004). "Such a relationship exists when one party has gained the confidence of the other and purports to act or advise with the other's interests in mind." Id.

By encouraging the Pehles to purchase life insurance through them, Farm Bureau purported to act with the Pehles' best interests in mind. In submitting to a procedure for extraction and consenting to an examination of their blood, the Pehles demonstrated that Farm Bureau had gained their confidence. We do not think that insurance companies must exist to treat or diagnose HIV in order for a duty to arise that necessitates that applicants be properly put on notice to inquire further.

This obligates us to return to a balancing analysis. We must inquire who is in "the best position to guard against . . . injury." Duncan, 991 P.2d at 745. The Pehles claim that because defendants were in exclusive possession of the information regarding their HIV status, the defendants are in the best position to guard against injury. Although this

11

claim may be true, it is unclear whether, having notified the Pehles as to the reasons for their denial of coverage, Farm Bureau had done what it could do to fulfill the responsibilities of its relationship with the Pehles without putting an unreasonable burden on itself, turning a $2.80 HIV test into a much more expensive and risky proposition. We hold therefore that if an insurance company, through independent investigation by it or a third party for purposes of determining policy eligibility, discovers that an applicant is infected with HIV, the company has a duty to disclose to the applicant information sufficient to cause a reasonable applicant to inquire further. There is a genuine issue of material fact as to whether that duty has been met by Farm Bureau, and that is a question for a factfinder.

Farm Bureau argues, however, that the common law cannot recognize a duty in the Pehles' scenario because such a duty has been preempted by the Wyoming legislature. Unless prevented by constitutional limitation, the common law may, of course, be changed by legislation. Zanacanelli v. Central Coal & Coke, 173 P. 981, 984 (Wyo. 1918). Wyoming's reporting statute provides that "a physician or other health care provider, . . . the administrator of . . . any . . . health care facility . . . and the administrator or operator of a laboratory performing a positive laboratory test for sexually transmitted disease shall report the diagnosis . . . to . . . the department of health." Wyo. Stat. § 35-4-132. Farm Bureau says the reporting statute deals with the duties of notification relative to STD's, preempting the field, and clearly does not include insurance companies.

But in adopting the foregoing statute, the Wyoming legislature indicates no intent to depart from the common-law rule concerning duties to disclose, and certainly does not purport to cover all aspects of either an infection-notification or an insurance company/applicant duty. It is well established that if an act does not address an area comprehensively, it does not eliminate the relevant common-law concept.

In conclusion, the trust and confidence that the Pehles put in Farm Bureau was sufficient to create a relationship giving rise to a limited duty, informed by the potential burdens and harm to all parties and the public. Wyoming law compels the conclusion that if an insurance company, through independent investigation by it or a third party for purposes of determining policy eligibility, discovers that an applicant is infected with HIV, the company has a duty to disclose to the applicant information sufficient to cause a reasonable applicant to inquire further.

Negligence Per Se

Even though LabOne is not under a contractual duty to the Pehles, it may have a statutory obligation to report their condition indirectly by compliance with applicable Wyoming statutes, and thus we next consider the statutory issue. The Pehles allege that Wyoming statutory law imposes negligence per se on LabOne. This argument is grounded in the common-law doctrine of negligence arising out of a statutory violation. Wyoming Statutes sections 35-4-130 through 35-4-134 require the reporting of communicable diseases. Laboratories are explicitly included in Wyoming's reporting

13

statute, Wyo. Stat. § 35-4-132, but it is unclear whether out-of-state laboratories are covered. We need not reach the question of whether LabOne is obligated to comply with the Wyoming reporting statutes, however, because we conclude that the statutes would not confer negligence per se on LabOne, even if they did apply.

In Wyoming, a violation of a statute constitutes evidence of negligence only if the plaintiff is in the class of persons the statute was intended to protect and the injury is of the type the statute was intended to prevent. Distad v. Cubin, 633 P.2d 167, 175 (Wyo. 1981). Accordingly, we analyze whether Wyoming's reporting statutes were intended to protect the Pehles from the injury they sustained.

The Pehles cannot sue under a negligence per se theory merely as members of the public. In negligence per se cases, we must ask whether the policy behind the legislative enactment will be appropriately served by using the policy to impose and measure civil damage liability. This is the same inquiry we must make when determining if an implied right of action under a given statute exists. In that context, the Supreme Court has held that there is such a right when "disregard of [a] . . . statute . . . results in damage to one of the class for whose especial benefit the statute was enacted." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 295 (1998) (emphasis added). We thus examine the Wyoming reporting statutes to see if the duty they create runs to individuals, or rather to the public at large. See, e.g., Short v. Ultramar Diamond Shamrock, 46 F. Supp. 2d 1199, 1200 (D. Kan. 1999).

14

Section 133 of the reporting statute provides that health officers upon receipt of a report or notice of an AIDS case "may provide for the examination of the infected individual" and "require the infected individual to seek adequate treatment or . . . submit to treatment at public expense." The Pehles point to this language to argue that victims of diseases themselves are a separate class intended for protection under the statutes. Yet the statute's own statement of its intent refutes this argument; it states unequivocally that its purpose is to benefit the public in preventing the spread of sexually transmitted disease. Wyo. Stat. § 35-4-131(b), Wyo. Stat. § 35-4-132(a).[3]

Finally, we note that no Wyoming court has ever recognized that a private right of action derives from the Wyoming reporting statutes, nor has one ever used such statutes to define the standard of care in a negligence per se action. To the contrary, Wyoming courts have counseled against such recognition in the absence of legislative guidance. See Tidwell v. Hom, Inc., 896 P.2d 1322, 1326 (Wyo. 1995). With that in mind, we must be wary in our Cubin analysis not to go beyond the bounds of the state law we are obliged to apply. When "[n]o private cause of action . . . can be discerned," the courts are left on "thin ice" in basing civil damages on a statutory violation. Id. Because Wyoming's reporting statutes were primarily intended to protect the general public, and not HIV victims, we cannot conclude that LabOne committed negligence per se by not informing

---

[3] Some courts have further pointed out that those from whom the law seeks to protect cannot be the class for whose especial benefit the statute was intended. See, e.g., Bertelmann v. Taas Assoc., 735 P.2d 930, 934 (Haw. 1987).

the Pehles of their HIV status.[4]

<h1 style="text-align:center">V</h1>

In conclusion, Wyoming common law imposed a limited duty on Farm Bureau. The district court therefore erred in concluding that Farm Bureau owed no duty to the Pehles. We therefore **REVERSE** the decision of the lower court as relates to Farm Bureau Life. Because the Pehles have neither a sufficient relationship to establish a traditional common-law duty with LabOne, nor membership in the class of protectees that would permit them to sue under a theory of negligence per se, we **AFFIRM** the lower court's grant of Summary Judgment favoring LabOne and its supervisor J. Alexander Lowden.

---

[4] However, plaintiffs do not assert on appeal, and we do not address, whether there is a right of action against <u>Farm Bureau</u> arising from violation of Wyoming's reporting statutes.

03-8068, *Pehle v. Farm Bureau*
**TACHA**, Chief Circuit Judge, dissenting in part, concurring in part.

I respectfully dissent with regard to the majority's opinion that Wyoming imposes a duty on Farm Bureau.

Whether Farm Bureau owed the Pehles a limited duty to disclose the results of their HIV tests is an issue more properly certified to the Wyoming Supreme Court. To begin, no Wyoming court has ever addressed this question. Moreover, the finding of a duty under Wyoming law turns not only on the relationship between the parties, as the majority suggests, but also involves a comprehensive eight-factor balancing test that is better determined by Wyoming's own courts. *See Duncan v. Afton, Inc.*, 991 P.2d 739, 744 (Wyo. 1999) (including factors such as the moral blame assessed to the defendant's conduct, the policy of preventing future harm, and the impact on the community and the courts).

Additionally, in deciding whether to impose a common-law duty not previously recognized by the Wyoming Supreme Court, this Court has stated that we should consider the "decisions of Wyoming courts, other state courts and federal courts, [and] the general weight and trend of authority," *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (internal quotations and alterations omitted). But I am not familiar with, nor does the majority cite, any federal or state court that has found such a duty. To the contrary, it appears that every court to have addressed the issue has declined to impose a common law duty on an insurer to disclose pre-insurance medical test results, including HIV-positive test results, to an insurance applicant. *See, e.g.,*

*Eaton v. Continental Gen. Ins. Co.*, 147 F. Supp. 2d 829, 834 (N.D. Ohio 2001) ("Ohio has not adopted a common law duty requiring insurance companies to notify applicants of positive HIV test results."); *Doe v. Jackson Nat'l Life Ins. Co.*, 944 F. Supp. 488, 489 (S.D. Miss. 1995) (in HIV case, "an insurer has no duty to inform an insurance applicant of the results of a medical examination where the insurer administers the examination only to determine the insurability of the applicant"); *Doe v. Prudential Ins. Co.*, 860 F. Supp. 243, 252–53, 254–55 (D. Md. 1993) (same, and applicant's failure to request that blood test results be sent to physician, after insurance company indicated it would do so upon such request, constitutes contributory negligence); *Petrosky v. Brasner*, 718 N.Y.S.2d 340, 343 (N.Y. App. Div. 2001) (no duty to disclose serious heart abnormalities leading to death of insured); *Nolan v. First Colony Life Ins. Co.*, 784 A.2d 81, 85–86 (N.J. Super. Ct. App. Div. 2001) (no duty to disclose the results of blood tests showing elevated liver enzyme levels two years before the insured died of liver cancer). Given this backdrop, I would, at minimum, certify to the Wyoming Supreme Court the question whether a life insurance company has a duty to disclose positive HIV test results to an insurance applicant.