**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TROY D. PAGGEN,

    Plaintiff - Appellant,

v.

BANK OF AMERICA, N.A.; PUBLIC
TRUSTEE'S OFFICE OF ARAPAHOE
COUNTY, and any and all other parties
who may have an interest in the subject
property,

    Defendants - Appellees.

No. 18-1390
(D.C. No. 1:17-CV-01241-RBJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **BALDOCK**, and **CARSON**, Circuit Judges.[**]

Plaintiff-Appellant Troy Paggen borrowed over a half million dollars from

Defendant-Appellee Bank of America, N.A. (BANA) in 2003 and secured the loan with

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the appellant's brief and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument.

a deed of trust on his Aurora, Colorado property. Mr. Paggen defaulted on the loan in February 2009. In 2012, Mr. Paggen filed for bankruptcy, swore to the bankruptcy court he would surrender his property, and then obtained a chapter 7 discharge. Meanwhile, BANA sought to foreclose on the property three times, with each foreclosure attempt hindered by Mr. Paggen's roadblocks and delays.

After ten years without making a single payment on the mortgage, Mr. Paggen continues to stake his interest in the property. As a run-around to the impending foreclosure, Mr. Paggen filed this action asking the district court to proclaim the promissory note held by BANA was uncollectable because BANA did not foreclose within six years of his default. On appeal, Mr. Paggen argues the district erred when it determined BANA's foreclosure action was not time-barred and in determining BANA was entitled to summary judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.[1]

## I.

The relevant facts are not in dispute. In 2003, Mr. Paggen obtained a loan for $520,000 secured with a deed of trust on his Aurora, Colorado property. The loan required Mr. Paggen to make monthly payments beginning in 2003 and ending in 2033. Mr. Paggen ceased paying the loan after the January 1, 2009 payment period. After

---

[1] On appeal, Mr. Paggen also challenges the district court's determination that (1) Mr. Paggen was barred from challenging the foreclosure action as untimely because he declared his intention to surrender his property under oath to the bankruptcy court; and (2) equitable tolling was "required to accomplish the goals of justice." Given we affirm the district court on its primary reason for granting BANA summary judgment, we decline to discuss the district court's alternative holdings.

missing his February 1, 2009 payment, Mr. Paggen's loan went into default status on February 2, 2009.

Following the missed payments, BANA sent Mr. Paggen a notice of intent to accelerate on March 19, 2009, providing him an opportunity to cure his default of $7,886 by April 18, 2009. Since Mr. Paggen did not cure the default, BANA initiated foreclosure by delivering a notice of election and demand for sale ("NED") to the Arapahoe County public trustee on June 30, 2009; the county recorded the NED on July 9, 2009. Then, the public trustee scheduled an initial sale date on November 4, 2009 and BANA obtained an order authorizing sale of the property on August 12, 2009. The sale never took place, however, because of two delays. First, Mr. Paggen delayed the sale by applying for a short sale in 2009, which continued through November 2010. Second, a federally mandated foreclosure hold also prevented BANA from proceeding with foreclosure. BANA withdrew the NED on July 28, 2011.

On October 19, 2011, BANA initiated a second foreclosure action by recording another NED. The public trustee scheduled an initial sale date on February 15, 2012. This sale never occurred because Mr. Paggen filed for Chapter 7 bankruptcy on February 4, 2012, which triggered an automatic stay. In his Chapter 7 Individual Debtor's Statement of Intention form, Mr. Paggen swore he would surrender the property. The U.S. Bankruptcy Court granted a discharge on May 4, 2012. Shortly thereafter, on June 11, 2012, BANA placed the foreclosure on hold due to a settlement with the U.S. Department of Justice. BANA withdrew the second NED on July 9, 2012.

3

In June 2014, BANA's new loan servicer, Ocwen Loan Servicing, LLC, notified Mr. Paggen that he had until July 30, 2014, to bring the account current. At the time, Mr. Paggen owed $218,138.82. The letter stated that "[f]ailure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due . . . ." In January 2016, Mr. Paggen's loan transferred again to a new loan servicer, this time Shellpoint Mortgage Servicing. On February 15, 2016, Shellpoint sent a letter stating Mr. Paggen owed $287,051.04 and if he failed to cure the default by March 31, 2016, "Shellpoint will accelerate the maturity date of the Note." As before, Mr. Paggen did not cure, so BANA initiated its third foreclosure by filing a third NED on January 9, 2017, which the public trustee recorded on January 13, 2017.

Before the third-scheduled foreclosure sale could take place, Mr. Paggen initiated this action on April 24, 2017, in the District Court of Arapahoe County, Colorado. In the complaint, Mr. Paggen sought a Determination of Interests Pursuant to Colo. R. Civ. P. 105 and Declaratory Relief. Specifically, he asserted that the six-year statute of limitations began to accrue on February 2, 2009, the day he first defaulted on his loan, thus expiring on February 3, 2015. Mr. Paggen also sought a determination that the deed of trust was extinguished and unenforceable, and the underlying debt evidenced by the promissory note held by BANA was time-barred and uncollectable. Put another way, Mr. Paggen sought a quiet title declaration to show BANA no longer has any rights in the property—or to put it even more bluntly, he appears to want a free house! Concurrent with the complaint, Mr. Paggen filed a

4

Motion for Preliminary Injunction alleging irreparable harm if BANA was allowed to proceed with its foreclosure and the likelihood of success on the merits of Mr. Paggen's case. The state district court issued a preliminary injunction to halt any effort to foreclose on the property until the case could be heard.

Then, BANA removed the case to the Federal District Court for the District of Colorado and moved for dismissal with a Motion for Judgment on the Pleadings. Before the district court ruled on the motion, BANA moved for summary judgment. BANA argued it timely initiated foreclosure because the six-year statute of limitations began to run upon acceleration as opposed to default. Then, BANA argued it effectively abandoned its 2009 and 2011 foreclosures by withdrawing those actions, thus restoring the loan's installment status and its original 2033 maturity date.

The district court granted summary judgment in favor of BANA. The court held under Colorado law (1) acceleration, not default, triggers the six-year statute of limitations; and (2) lenders can cancel an accrual date by "decelerating" the debt subsequent to an effort to foreclose. In the alternative, the district court relying on federal law held Mr. Paggen's statement made in his 2012 bankruptcy proceeding indicating he would surrender his Aurora property barred him from now arguing the statute of limitations had expired. Also, in the alternative, the court held equitable tolling extended the statute of limitations. Mr. Paggen timely appealed the order.

We review a district court's grant of summary judgment de novo, using the same standard the district court applied. *Banner Bank v. First Am. Title Ins. Co*., 916 F.3d 1323, 1326 (10th Cir. 2019). Summary judgment is warranted where the movant

5

demonstrated there was no genuine dispute as to any material fact and the movant was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Given the underlying facts are not in dispute, we narrow our focus to whether the district court erred in concluding BANA is entitled to summary judgment as a matter of law.

II.

This case involves a dispute over the accrual date of the six-year statute of limitations period for promissory notes per Colo. Rev. Stat. § 13-80-103.5(1)(a). Under Colorado law, "all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt," shall be commenced within six years after the cause of action accrues and not thereafter. *Id*. The parties agree the statute of limitations governing any action to enforce the promissory note is six years but disagree about when that six-year period began to accrue. Mr. Paggen contends the district court erred when it concluded the accrual date ran from the January 13, 2017 NED recording rather than the date of default. Mr. Paggen also argues the district court erred when it decided lenders of an installment debt can unilaterally decelerate the debt, thereby resetting the note's original maturity date.

A.

We first turn to whether the district court erred in determining the statute of limitations began to accrue upon acceleration, not default. Mr. Paggen argues the accrual date ran from the date of default on February 2, 2009 rather than the date BANA recorded the third NED on January 13, 2017. To support his accrual-upon-default rule, Mr. Paggen relies on *Lovell v. Goss*, a case decided over a century ago, which held a

creditor's foreclosure action "accrued upon the date of such default, and the statute of limitations began to run from that date." *Lovell v. Goss*, 101 P. 72, 74–75 (Colo. 1909). But a lot has changed since the court decided *Lovell*.

Recent authorities, including decisions from the Colorado Supreme Court, the Colorado Court of Appeals, and district courts applying Colorado law, however, have called into question *Lovell*'s continuing vitality. The general trend of authority suggests accrual begins upon acceleration, not default. In 2012, the Colorado Supreme Court announced the legal framework for determining when the statute of limitations begins to run on an installment payment security agreement. *See Hassler v. Account Brokers of Larimer Cty*, 274 P.3d 547, 553 (Colo. 2012). In *Hassler*, the Colorado Supreme Court ultimately declined to decide whether accrual begins upon default or acceleration, but not without first expressing serious doubt about its decision in *Lovell*.[2] In questioning whether *Lovell* is still good law, the court explained the case was decided prior to Colorado's adoption of the UCC and "is at odds with the rule adopted by a majority of states." *Id.* at n.11. The Colorado Court of Appeals also has expressed doubt about *Lovell*. *See In re Application of Church*, 833 P.2d 813, 815 (Colo. App. 1992) (distinguishing and declining to apply *Lovell*); *Green Tree Fin. Serv. Corp. v. Short*, 10 P.3d 721, 723 (Colo. App. 2000) (declining to apply *Lovell* as inapplicable because it was decided before the relevant UCC statute was adopted); *Castle Rock*

---

[2] In *Hassler*, the Colorado Supreme Court declined to decide the issue because the action would be time-barred under either circumstance. *See Hassler*, 274 P.3d at 557.

*Bank v. Team Transit, LLC*, 292 P.3d 1077, 1084–85 (Colo. App. 2012) (acknowledging *Lovell* but applying the *Hassler* framework). And recently, after decades of questioning whether *Lovell* was still good law, the Colorado Court of Appeals adopted the *Hassler* accrual-upon-acceleration framework without even mentioning *Lovell*. *See Bank of New York Mellon v. Peterson*, 442 P.3d 1006, 2018 WL 6564860, *4 (Colo. App. Dec. 13, 2018), *mod. on denial of r'hrg*, Jan. 10, 2019; *cert. denied sub nom Parker v. Bank of New York Mellon*, No. 19SC84, 2019 WL 2336938 (June 3, 2019). In *Peterson*, the Colorado Court of Appeals explained,

> if an obligation that is to be repaid in installments is accelerated either automatically by the terms of the agreement or by the election of the creditor pursuant to an optional acceleration clause—the entire remaining balance of the loan becomes due immediately and the statute of limitations is triggered for all installments that had not previously become due.

*Peterson*, 442 P.3d at *4 (citing *Hassler*, 274 P.3d at 553). Thus, since its decision in *Lovell*, the Colorado Supreme Court as well as the Colorado Court of Appeals has consistently ruled in favor of the accrual-upon-acceleration rule.

"In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of common law, but simply to ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quotation omitted). "When no decision of a state's highest court has addressed an issue of that state's law," the federal court "must predict how the State's highest court would rule." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (citation omitted). To make this prediction, we "must follow any intermediate

8

state court decision unless other authority convinces us that the state supreme court would decide otherwise." *United States v. Badger*, 818 F.3d 563, 569 (10th Cir. 2016) (citing *Diatom Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984)). We may also look to district court decisions interpreting the law of the state in question, dicta by the Colorado Supreme Court, and the general weight and trend of authority in the relevant area of law. *Pehle v. Farm Bureau Life Ins. Co., Inc.*, 397 F.3d 897, 901–02 (10th Cir. 2005); *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 386 (10th Cir. 1979); *Wade*, 483 F.3d at 666.

Mr. Paggen concedes *Peterson* is "directly on point with the facts of this case" but argues we should decline to follow *Peterson*. Rep. Br. at 3. Citing no authority, he contends following *Peterson* "would bar any statute of limitations defense and would be contrary to established precedent." *Id*. Given that we are tasked with ascertaining and applying state law without reaching our own conclusions regarding the substance of Colorado's law, we must follow *Peterson* unless other authority convinces us the Colorado Supreme Court would decide otherwise. *Wade*, 483 F.3d at 666. The general weight and trend of authority suggests *Lovell* is outdated and inapplicable. Specifically, the doubt the Colorado Supreme Court expressed in *Hassler*, coupled with the handful of cases that declined to apply *Lovell*, indicates the Colorado Supreme Court would not follow *Lovell* in this case. We predict, instead, the Colorado Supreme Court would hold the statute of limitations begins to run upon acceleration, just as the Colorado Court of Appeals did in *Peterson*. *Peterson* at *4.

9

## B.

Next, we turn to whether the district court erred in determining lenders of an installment debt can unilaterally decelerate the debt. Until recently, Colorado "ha[d] not yet had the opportunity to address the issue" because *Peterson* was a matter of first impression. *Id.* at \*4. Then in *Peterson*, Colorado joined a majority of states that allow a creditor to abandon the acceleration, or decelerate the debt, which restores a note's original maturity date for purposes of accrual. *Id.* at \*4.

Mr. Paggen argues good cause exists to decline to follow *Peterson*, in part, because it is so new. Mr. Paggen contends we should correct the Colorado Court of Appeal's alleged mistake by declining to follow *Peterson*, not because there is contrary authority—Mr. Paggen cites none—but rather because *Peterson*'s "practical application" is unworkable. Specifically, he argues measuring accrual from acceleration while also allowing a creditor to decelerate would create a scenario where "no debt would ever be time barred based on an acceleration of the debt because Colorado law requires a foreclosure action to be abandoned long before 6 years would ever pass." But again, he cites no authority to convince us *Peterson* is "palpably wrong," as he suggests.

As in the first issue, because the Colorado Supreme Court has not decided on whether Colorado would recognize a creditor's ability to decelerate a note, we must predict how it would rule. *Badger*, 818 F.3d at 569. To make this prediction, we "ascertain and apply" Colorado law without reaching our "own judgment regarding the substance of the common law." *Wade*, 483 F.3d at 665. We must "follow any

10

intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." *Badger*, 818 F.3d at 569.

Peterson is on point with the facts of this case and tells us that "in Colorado, a lender may abandon the acceleration of a note." *Peterson* at *5. Sitting in diversity, our task is not to pass judgment on the practical implications of a state court decision, this Court's task is to apply it. *Wade*, 483 F.3d at 665. Given "[t]he great weight of authority recognizes th[e] right of abandonment" and in the absence of authority that convinces us that the Colorado Supreme Court would hold otherwise, we must follow *Peterson*. *Peterson* at *5. We predict the Colorado Supreme Court would allow a creditor to decelerate a debt and restore a note's original maturity date. *Id.* at *4.

C.

Under the terms of the note at issue here, Mr. Paggen promised to pay $520,000 plus interest to BANA in monthly installments for thirty years and, in the event of default, BANA retained an option to accelerate the note's maturity date. Mr. Paggen defaulted on the note on February 2, 2009 and BANA accelerated the note on July 13, 2009 by recording a NED in the public trustee's office. Upon recording the NED, the entire debt became due and the foreclosure process commenced. *See Land Title Ins. Corp. v. Ameriquest Mortg. Co.*, 207 P.3d 141, 143 n.6 (Colo. 2009) ("When recorded by the public trustee, a notice of election and demand for sale commences the public trustee foreclosure process."). Roughly two years later, on July 28, 2011, BANA withdrew the NED, which decelerated the note. The first deceleration was short-lived because BANA accelerated the note again by recording its second NED on October 19,

11

2011. Roughly nine months later, BANA withdrew its second NED on July 5, 2012. Each time BANA withdrew a NED, it abandoned the acceleration and restored the note's original maturity date. *See Peterson* at *5. In the final episode of this tumultuous saga, BANA recorded its third NED on January 13, 2017. When BANA recorded its third NED, it accelerated the note and triggered the statute of limitations to begin to run. Colo. Rev. Stat. § 13-80-103.5(1)(a). Measuring from BANA's most recent initiation of the foreclosure action on January 13, 2017, the limitations period on Mr. Paggen's note will not expire until January 2023. Because Colorado law and the language of the note support the holding that accrual begins to run upon acceleration, the district court did not err in determining BANA's foreclosure action was not time-barred and in determining BANA was entitled to summary judgment as a matter of law.

## III.

On this record, we conclude the district court correctly determined the statute of limitations began to run on January 13, 2017 and had not expired when BANA foreclosed Mr. Paggen's property. The district court did not err in determining BANA was entitled to summary judgment as a matter of law. The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

12